# MARY KEENEY

## v.

# TERESA HENNING, GEORGE HENNING, CHRISTIAN HANDEL and BERTHA, his wife.

[Submitted February 27th, 1899. Decided March 14th, 1899. Filed September 26th, 1899.]

1. A wife who, after her husband's death, occupies a portion of decedent's premises, with the family, and rents the remainder, is not entitled to retain possession of the whole under the right of quarantine.

2. Where a child, while residing with her mother, earned and delivered to her wages sufficient for her support, the mother cannot escape an accounting to her for rents of the premises of her deceased husband, in which the child had an interest, because she occupied them with her family, and lived from the rents.

3. Complainant, after reaching her majority, by bill in chancery against her mother, sought a partition of her father's realty and an accounting for the rents. The mother, as guardian of complainant, claimed that such rents must be accounted for by her as guardian in the orphans court, where she had accounted for a portion of the rents collected.—*Held,* that as to the rents accruing after the accounting to the orphans court, the chancery court has jurisdiction.

4. Complainant sought in chancery a partition of her father's realty and an accounting by her mother for rents, for a portion of which her mother, as guardian, had accounted to the orphans court. Complainant and her mother had occupied for a time a portion of a tenement on the premises.—*Held,* that defendant must account for the rents of all the premises from the time of the accounting to the orphans court, except for the portion of the time that complainant lived at home, as defendant is entitled to her dower therein, which claim is inconsistent with her holding any part under the right of quarantine.

5. The right of a parent to the earnings of his or her infant child is subject to the burden of the support of the infant, which burden is not relieved by the fact that the infant has an independent income.

Bill for partition and account of rents and profits. Heard on bill, answer and proofs.

*Mr. Robert S. Hudspeth,* for the complainant.

*Mr. Charles L. Corbin,* for the defendants Teresa Henning and Christian Handel and wife.

*Mr. John F. Marion,* for the defendant George Henning.

PITNEY, V. C.

Complainant is one of the seven children of Ferdinand Henning, deceased, and the defendant Teresa his widow, and by her bill claims a one-seventh interest in and partition of certain real estate of which he died seized and intestate in the month of March, 1877, and an account for the rents and profits from the said Teresa.

At the time of her father's death the complainant was a little short of twelve years old, having been born in August, 1865. There were at that time two children, Bertha and Henry, older than herself, and three younger, and the defendant George was a posthumous child, who attained his majority pending the suit, and appeared at the hearing by counsel.

All of the children, except George and the complainant, have conveyed their interests in the premises to the defendant Teresa, and she has conveyed them to her son-in-law, the defendant Christian Handel, who admits that he holds them in trust for her. The defendants are the said Teresa, her son George and son-in-law Handel and his wife.

The defendants by their answer admit that the complainant is entitled to an equal undivided one-seventh part of the premises, and that they are so situate that they cannot be divided. The only question is as to the rents and profits, and with regard to those the circumstances are peculiar.

The real estate consists of a lot on the corner of Fourth and Coles streets, in Jersey City, with a frontage of twenty feet on Fourth street and ninety-five feet on Coles street. On it are, and were at the death of the ancestor, two tenements, each of three stories. The corner one, facing on Fourth street, is known as No. 63 Fourth street, and in the rear of that is an entirely distinct and separate tenement fronting on Coles street, which is known as No. 61 Coles street. Under each is a store. At the

time of his death the ancestor was carrying on the business of a cut-meat dealer in the store No. 61 Coles street and living with his family in the two stories above it. The whole of the corner building, No. 63 Fourth street, was rented out to a tenant or tenants.

On March 19th, 1877, shortly after her husband's death, letters of administration were granted to the defendant Teresa upon the estate of her husband, and she duly administered the same and settled her account on the 9th of March, 1878, showing a balance in her hands of $1,206.01.

She continued to reside with all her children in the small house, No. 61 Coles street, for about three years, and for that period to carry on the cut-meat business in the shop occupied by her husband, with the assistance of her older children, namely, Bertha, the oldest, the wife of the defendant Handel, and a son, Henry, who was about thirteen years old at the death of his father. But the proof is that she made little or no profit out of the business. She then abandoned it, rented out the meat-shop and with her family moved into the third floor of the corner house known as No. 63 Fourth street, and has continued to live there for a series of years, of late occupying the second floor of that house.

She has received all the rents and profits since her husband's death. On the 24th of March, 1877, letters of guardianship were issued to her by the orphans court of Hudson county of the person and estate of all her then children, and later on, after the birth of the defendant George, letters of guardianship were also issued to her of his person and estate.

On the 23d of March, 1881, she voluntarily presented to the surrogate an account of her guardianship of the seven children, which was presented by him to the judges of the orphans court on the 4th of June, 1881, and was passed on the 8th of September, 1881. By that account she charges herself with the rents and profits received in money for the premises and credits herself with disbursements, taxes and the payment of the interest and the principal of two mortgages thereon, aggregating $1,100, and shows a balance in her hands on rent account of

$100.52; then, after deducting one-third of that for her right as dowress, she credits her children with a balance of $67.02, which, divided among them all, makes $9.57 for each.

She also accounts in a separate schedule for the children's two-thirds share, being $804, of the balance of the personal estate found in her hands, and after deducting the charges of the surrogate in the guardianship and her commissions, which latter amount to $135.04, she shows a balance in her hands of $598.46, of which each child's share is $85.49, which, added to the $9.57, share of the rents above stated, amounts to $95.06.

She then charges each one of her children with their support from March 16th, 1877, to March 16th, 1881, four years, at $125 a year, in all $500, the language of the charge in each case except that of George being, "Paid board, clothing and schooling of minor from March 16th, 1877, to March 16th, 1881, four years, at $125 per year, $500." The same amount precisely is charged to her son George, who was not born till the 6th of June, 1877, and the charge to him reads in this wise, "Paid clothing and schooling of minor from June 6th, 1877, to March 6th, 1881, four years, at $125 a year, $500." In that way she brings each one of her children in debt to her in the sum of $404.92. That account, as we have seen, was passed by the orphans court.

The fact that the guardian had rendered an account of her dealings with the estate of her children, appears not to have been known by the complainant or her counsel when the bill was filed, and that pleading contains no prayer to be relieved from the effect of that decree. It alleges distinctly that said Teresa was not entitled to receive the rents and profits for her own use, and that the same belong to the heirs-at-law, and that she had never made any accounting of the same and prays an accounting.

The same seems to have been the state of mind of the defendant Teresa when she instructed counsel to draw her answer, for there is no allegation of any guardianship or any accounting in the orphans court of the rents and profits; but, on the contrary, the answer admits the receipt by her of all the rents and profits and asserts that she had the right to retain them, and that she kept up a home for the family in the mansion-house, and expended

the whole of the rents and profits of the property in supporting the children, and alleges that the use of the income for the support of the family was lawful and proper, and that the defendant Teresa is not compelled to account for them.

The answer also asserts that the complainant lived at home and had her support there until she was married in the year 1886; but, in point of fact, she was married in September, 1885, when, as we have seen, she was twenty years old.

The complainant swears that after her father's death she continued to go to school for two or three years, which would bring it to the summer vacation of either 1879 or 1880, the evidence does not distinctly show which; that she remained at home for a couple of months and then went to work as a saleswoman in a shop, receiving at first, as she swears, $4 a week (her mother swears it was only $2.50 a week at first and for a short time), for several years—five or six—until she was married; that for the first two years she had work for eight months in the summer only; after that she had work the year round, and she swears that the last part of the time she received $6 a week. All of these wages the complainant swears she turned in to her mother, not retaining one cent, and that her mother boarded and clothed her. The mother swears that she never received more than $4 a week from the daughter.

In the meantime her older sister Bertha was living at home and helping with the housekeeping; and her older brother was also working, but boarding at home and turning his wages in to his mother. The same thing occurred with regard to the younger children as they grew up; each one was kept at school until he or she was fourteen years old, and then got employment, and turned the wages in to the mother.

The question is whether the defendant Teresa must account to the complainant for the rents, and, if so, for how much, and for what portion of the premises and for what period.

The defendant's theory at first was that the widow was entitled to retain the possession of the whole of these premises under her right of quarantine. But this position is manifestly untenable, on the principle of the recent case of *Davis* v. *Lowden, 11 Dick.*

*Ch. Rep. 126.*   The husband was in the actual occupation only of the tenement at No. 61 Coles street, which was a separate tenement from that on the corner of Coles and Fourth streets, the latter being in the occupation of a tenant. And if there could be any doubt about the widow's liability to account, the fact that she as guardian of her children voluntarily accounted for those rents and profits up to the year 1881, is well-nigh conclusive against her.

In the next place, the defendant contends that there should be no accounting because the family was kept together in the premises and lived upon the rents and profits, and that the complainant had an equal benefit with the other children from that housekeeping. But such an appropriation of the rents and profits would be manifestly unfair to the other members of the family, and especially to the complainant, who was the first to leave home, and for most of the time before that earned her own living by working out and turned her wages in to her mother. The younger children were a burthen to their mother throughout nearly the whole period that elapsed after the death of her husband, while the complainant was a burthen for two or three years only.

The account rendered by the guardian in the orphans court is an illustration of the unfairness of such a settlement. Each child, without regard to the difference in the circumstances of age, cost of maintenance and individual earnings, is charged with precisely the same amount for board and clothing, to wit, $125 a year each. The widow admits that she had no property of her own, and no income except what she got from the rents and profits of the premises, and made little or no profit from her meat shop. She says she supported them out of the rents.

The net result of the accounting is that the widow in substance paid off the mortgage on the property with the proceeds of the balance of the personal property in her hands, supported the family for four years out of the net rents, and then brought her children in debt to her in that period in the sum of $400 each, or $2,800 in all. The result seems well-nigh absurd. It could not have cost her $125 per year each to support them, and

she is not entitled to any profit out of their support. *Alling* v. *Alling, 7 Dick. Ch. Rep. 92.*

The next ground relied upon by the defendant is that there should be no accounting for the rents and profits in this action, because the defendant Teresa was guardian of the complainant, and these rents and profits should be accounted for as guardian ; and *Pyatt* v. *Pyatt, 1 Dick. Ch. Rep. 285,* is relied upon for that purpose. But I do not understand that case to sustain the position. There the widow had kept a home for her children, much as this widow has, and also administered on her husband's estate, and a balance was found in her hands as administratrix, of which one of her daughters was entitled to a share of upwards of $400. The mother was also, as here, appointed by the orphans court guardian of her daughter. Many years after the daughter attained her majority she cited her mother in the orphans court, to account as guardian for her distributive share in the estate of her father which came to her mother's hands as her guardian. The mother there set up the same defence as this mother sets up here. There was in that case no question of rents of real estate, or earnings of a child turned in to the mother, but the mother set up and proved to the satisfaction of the court that she had expended her child's share of her father's estate in her support and maintenance, and charged her $3 a week for such support and maintenance, not only during her minority, but for several years after her majority, bringing her in debt over $1,000. The orphans court allowed this account and rendered a decree against the daughter for the balance due the mother, which balance consisted wholly of her board before she became of age. The chancellor, on the appeal, disallowed all of the charges of the mother against the daughter, for reasons set forth by him in *17 Stew. Eq. 491.* The court of errors and appeals reversed this decree, and reinstated the decree of the orphans court to the extent that it sustained the charge against the daughter for board after she became of age, sufficient to extinguish the amount of money in the guardian's hands. It held that the board furnished to the daughter after she became of age was in effect a payment to her of the amount of money which the mother owed her as guardian,

and that the orphans court had jurisdiction to determine that the debt of the guardian to the infant had been paid in that manner, but not to go further and find an indebtedness from the ward to the mother.

The difference between that case and this is that there the ward herself appealed to the jurisdiction of the orphans court. It would have been quite competent for her to have brought suit in this court for an accounting of the moneys in the mother's hands. Here the daughter is rightly in this court for a partition of the premises, and for an account of the rents and profits. The accounting in the orphans court can only be a bar to the extent to which the guardian has there accounted. The jurisdiction of this court to order an accounting after that time is quite clear.

I am of the opinion that she must account.

The next question is, of what part of the premises should Mrs. Henning be charged with the rent?

Counsel for complainant contends that she should account for the rent of the little meat shop under the dwelling No. 61 Coles street during her occupancy of it, because under the doctrine of *Davis* v. *Lowden*, that shop was not a part of the dwelling of her husband.

But I do not find it necessary to decide the question thus raised, because the time she so occupied that meat shop was entirely covered by her voluntary accounting for these rents in the orphans court, and presumably must have received the attention of that court. Besides, the profit of the occupation of that shop is so mingled with the cost of the support of the family during the time that the complainant was an actual charge upon her mother, that it is quite impossible to distinguish and extricate it.

The next question arises out of the effect of her removal from No. 61 Coles street, which was the messuage and mansion-house of her husband, to rooms in No. 63 Fourth street. The contention of the complainant is that she abandoned her quarantine when she moved out of No. 61, and that her subsequent occupation of the rooms in No. 63 cannot be attributed to her

right of quarantine. This question is, in strict law, probably well taken, but I think that the strict rule upon which it is based should not be fully applied here. The complainant is in a court of equity, and must have her relief upon equitable terms. No dower was ever assigned to the widow, though at the end of the four years' accounting covered by the orphans court the complainant had attained the age of nearly sixteen years, and was competent to institute proceedings to assign such dower. So far as the occupancy of the premises is concerned, the complainant, before she married, enjoyed equal benefits with each of her brothers and sisters, and it seems to me it would be inequitable for her in this accounting to charge her mother with the rent of the floor that she occupied at No. 63 Fourth street during that period.

The defendant must account for the rents she received from No. 61 Coles street, as well as those from No. 63 Fourth street, except during the period complainant lived at home, for the rooms which she and her children occupied, and that accounting must commence with the 16th of March, 1881.

After the complainant left her mother's home—September, 1885—defendant must account for the rent of all the property, for the simple reason that she will be entitled to one-third of it as dowress, and that is inconsistent with her holding any part of it under any supposed right of quarantine.

Taking all the evidence together, I am satisfied that the wages of the complainant which she turned over to her mother after the accounting—March 16th, 1881—fully compensated her mother for the support and maintenance of the complainant, and that the complainant should not be charged anything for that support and maintenance. The parental right to the earnings of the infant is burthened with the duty to support, which is not relieved by the fact that the infant has an independent income. It would be monstrous to hold that a parent may compel his or her infant child to work for the parent's benefit, and at the same time charge the infant with its support out of its independent estate. The answer does not claim any benefit from the statute of limitations, and no point of that kind was taken in the argument.

North Jersey Street Ry. Co. *v.* South Orange.

There will be a reference to a master to take the account, and the question of whether or not the defendant is to have credit for the balance found against the complainant by the decree of the orphans court, will be reserved till the coming in of the master's report.

There will, of course, be an order for sale.