REYNOLDS v. BRITTON et al.

(Supreme Court, Appellate Division, First Department. February 10, 1905.)

1. MORTGAGES—FORECLOSURE—FINDINGS OF TRIAL COURT—EVIDENCE—SUF-
FICIENCY.

In an action to foreclose a mortgage, evidence *held* to support a finding that the mortgage was a separate transaction, and not part of an illegal lobbying contract.

Hatch and McLaughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Thomas L. Reynolds against Ruth Britton, as executrix of the will of Dennis McMahon, deceased, and another. From a judgment for plaintiff, Lucy Bowen, an heir of testator, appeals. Affirmed.

The action is to foreclose a mortgage given by Dennis McMahon, now deceased, dated June 19, 1900, for the sum of $7,000. The answer interposed by Lucy Bowen, daughter of Dennis McMahon, denies that there is anything due on said mortgage, and avers it was given in pursuance of an agreement whereby the plaintiff, as stated, in a contract made April 25, 1900, agreed to render certain services to bring about a sale of the premises in question to the city of New York under an act of the Legislature; that the plaintiff represented that he could obtain the passage of such bill, and it was agreed that said mortgage should be ineffective unless and until the sale contemplated was made, and no such sale has been made. The contract referred to (Exhibit A) provides that, whereas Dennis McMahon is the owner in fee of lands under water adjacent to Ward's Island, and Thomas L. Reynolds has agreed to sell said premises by condemnation proceedings, he is employed to dispose of said lots under condemnation proceedings, or through a commission to be appointed, nothing to be paid to him "until the money or price recovered * * * for the land so to be sold and condemned is payable * * * by the proper authorities," in which event he is to be paid out of moneys so obtained 50 per cent. of such sum, and nothing to be paid unless the purchase or condemnation of said lands is authorized by act of the Legislature or otherwise during the years 1900, 1901, 1902, and 1903; the said Dennis McMahon reserving the right to obtain a mortgage of said lands, not exceeding $10,000 in all, which, on final settlement with said Reynolds, will be deducted out of said McMahon's share of the proceeds of said property. In addition to this contract signed by the two parties, we have an agreement, or "contract for a mortgage," in the form of a letter, dated June 16, 1900, from Dennis McMahon to the plaintiff, saying: "I will take your house and lot No. 79 West 134th Street, and give you $13,500 for it * * * as follows: Deduct the mortgage on it of $8,500. * * * The balance $5,000 by a mortgage on my 107 lots of water property around Ward's Island payable in three years * * * with the privilege to add in the $5,000 mortgage the further sum of $2,000 payable in like manner. * * * The $2,000 to be added in being a running security for such additional sums as you may advance to me from time to time, as I may request, not exceeding $25 a month thereafter from date. The taxes * * * on the 107 water lots to be paid out of the water property when sold—you to continue your efforts to sell the water right under our contract which is to be preserved. If sold within the contract time, then the amount due on the $7,000 mortgage to be paid out of my share of the proceeds of sale. * * * On final settlement of the water right transaction due account the one to the other is to be made. On June 30th or sooner the deed to 79 (Warranty) to be made to me and the mortgage of $7,000 to be delivered to Reynolds." This letter is signed by McMahon, and marked "Accepted" by Reynolds. It was testified that there was another paper, which was found in Mr. McMahon's safe upon his decease, but which has been lost by the executrix— a typewritten paper, dated June, 1900, with interlineations in the handwriting of the deceased, signed by him and Mr. Reynolds—the sum and substance

of the paper being "that the mortgage should not be foreclosed until the property was sold"; "the water rights around Ward's Island affected by this case." Mr. Reynolds testified that he did not advance the sum of $2,000 to McMahon, as that much was not required by him, but advanced a few hundred dollars, which has been repaid, so that the mortgage is for the sum of $5,000; that he knew about the contract referred to and the bill mentioned, and he had rendered services in securing its passage through the Legislature, through a Senator named, and appeared before the committee; that the bill passed both houses in 1900, and went to the mayor, who vetoed it, and in 1901 it never got out of the cities committee; that he had given money to the Senator, in the form of checks from Mr. McMahon (see Exhibits E and F) for $100 and $75, which he borrowed from Mr. McMahon upon notes which the Senator discounted, and that a district leader discounted another; that he (plaintiff) never signed any such paper as was testified to as lost; and that he had no conversation about these matters on the day of Mr. McMahon's decease. Lucy Bowen testified that, on the day of her father's decease, Mr. Reynolds called and asked for the interest on the mortgage, and she said it was to secure the contract for the sale of the water rights, and he said "Yes," and that they were very valuable, being worth some $200,000; that he was trying to get the bill through the Legislature for the sale of the water rights; that her father owed him money, but they need not bother about the house, as the mortgage covered that, but it was important that the interest on the water-rights mortgage be paid. Ruth Britton, also a daughter of Dennis McMahon, testified that she heard a conversation between plaintiff and her father when the checks were given, in which plaintiff said he was short of money, and needed it for these people, and that he spoke of selling the water rights, and of the bill pending; that her father died in November, 1902, and that day the plaintiff called, and she heard him speaking with Mrs. Bowen of the water rights as being very valuable; and that he said the interest on the mortgage should be paid, and that the 134th street house was not worth the mortgage on it, $7,500. Upon the evidence the court held that there was no connection between the mortgage and the agreement dated April 25th, that there never was any agreement for the postponement of the mortgage until the sale of the water rights, and that there should be judgment for the plaintiff for the sum of $5,000 and interest. From such judgment the defendant Bowen appeals.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Robert J. Mahon, for appellant.
Claude V. Pallister, for respondent.

O'BRIEN, J. The appellant insisted in the court below, and contends upon this appeal, that the contract for services and the subsequent contract for the mortgage were but parts of a single, indivisible arrangement or agreement, under which the plaintiff was to perform certain services in connection with the sale of water lots belonging to McMahon, deceased, and that the mortgage under foreclosure was given as additional security for such services; that such contract was a "lobbying" agreement to improperly influence legislation, and is therefore void as against public policy. If the finding of the Special Term against this contention be sustained, then it becomes immaterial and unnecessary to determine whether or not the first agreement, relating to the sale of the lots, was or was not a lobbying contract, such as is condemned because against public policy. Upon the disputed question of fact as to whether both agreements were inseparably connected as parts of one transaction, the learned judge at Special Term resolved it in plaintiff's

favor; and, unless it is against the weight of evidence, we are not justified in disturbing the finding.

It must be conceded, we think, that in form, at least, the agreements are separate and distinct; arid were it not for the fact that, in the contract for the mortgage, it was stated that the contract under which the plaintiff agreed to sell the water lots for McMahon was to be preserved, the finding of the Special Term would be amply supported. This reference, however, to the former agreement under which the plaintiff was to sell the lots, raised a strong inference in favor of the view for which the appellant contends. On the other hand, in viewing the transaction relating to the sale of the plaintiff's house on West 134th street, it appears, with respect to the mortgages thereon—the first for $7,500, and the second for $1,000—that Mr. McMahon regarded himself as obligated to pay them, as evidenced by the fact that he did actually pay the second mortgage, for $1,000, which mortgage, to the extent of three-fourths, at least, was owned by plaintiff. Were it not that the evidence shows that the house on West 134th street was not worth much, if anything, over the $8,500 in mortgages, we would be forced to conclude that it was a bona fide transaction, under which Mr. McMahon purchased from the plaintiff the property. The fact that he paid much more than its value is not conclusive against the good faith of the transaction, because it is of frequent occurrence for purchasers to pay more than property is worth. We have, however, the two facts that for the $5,000 mortgage Mr. McMahon received little or no value, and in the letter embodying the contract for the mortgage the reference is made, as already suggested, to a continuance of the contract under which the plaintiff agreed to sell the water lots. We have, therefore, a close question of fact, which, in the light and with the aid of the other testimony in the case, it was for the learned trial judge to decide. It is not our purpose to detail the testimony at length, but, in passing, we feel justified in saying upon the subject of the weight of evidence that the testimony of both the plaintiff and the daughters of Mr. McMahon, as bearing upon the disputed questions of fact, was of the most unsatisfactory kind. Thus the credibility to be attached to the plaintiff's evidence was seriously affected by his cross-examination; and that on the part of the daughters was weakened not alone by the improbability of some parts of it, but by the fact found by the learned trial judge that they failed to satisfy him that there was a typewritten agreement, made at the same time as the contract for the mortgage, to the effect that mortgage was not to be foreclosed until the water rights were sold.

We have sufficiently indicated our view that the disputed questions of fact as to whether the contract for the mortgage was an inseparable and integral part of the agreement for the sale of the water lots, or whether the consideration for the mortgage was other or different than services to be rendered in obtaining legislation, were for the trial court. Apart, therefore, from any opinion upon the facts which we might express, had we the right in the first instance to determine them,

we think, because not contrary to or against the weight of evidence, that we would not be justified in disturbing the findings made by the learned trial judge. It follows that the judgment should be affirmed, with costs.

PATTERSON and LAUGHLIN, JJ., concur.

HATCH, J. (dissenting). The evidence in support of appellant's contention as to the contract for services for a sale of the water lots and the contract for the mortgage satisfactorily establishes to my mind that they were both parts of a single scheme, executed for the purpose of inducing service in procuring the passage by the Legislature of a bill authorizing the city of New York to acquire title to the water rights. The oral and documentary evidence in the case establishes with a considerable degree of satisfaction that the contract contemplated improper service in connection with the passage of the bill by the Legislature, and that, within the rule announced in Mills v. Mills, 40 N. Y. 543, 100 Am. Dec. 535, and Chesebrough v. Conover, 140 N. Y. 382, 35 N. E. 633, such contract was a contract for "lobby service," and, as such, is void as being against public policy. The steps taken in performance of the contract, evidenced by documentary proof, when coupled with the declarations of the plaintiff respecting the purpose for which he proposed to use the money, sufficiently characterizes the contract, and brings it within the ban of the law.

I think, therefore, the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

McLAUGHLIN, J., concurs.