FANNIE REINGOLD, PLAINTIFF-RESPONDENT, v. SOPHIE REINGOLD AND NATHAN REINGOLD, DEFENDANTS-APPELLANTS.

Submitted May 31, 1935—Decided October 9, 1935.

For the appellants, *Samuel P. Orlando.*

For the respondent, *David L. Horuvitz.*

The opinion of the court was delivered by

PERSKIE, J.  Respondent, plaintiff below, an unemancipated infant of nineteen years of age, was a passenger in an automobile owned by her stepmother and operated by her father.  The latter, defendants below, are the appellants here.

The claim was that respondent sustained injuries as a result of the negligent operation of the car by the father while it was being driven over an S shaped bridge near Baltimore, Maryland, on April 20th, 1930.  The suit was commenced on September 23d, 1933, and filed on November 28th, 1933.  At the time of this suit respondent was over twenty-one years of age and fully emancipated.  The trial judge refused to nonsuit or direct a verdict.  He submitted the case to the jury and the latter returned a verdict of $6,250 in favor of the respondent and against the appellants.  It is the judgment, based on that verdict, that is the subject-matter of this appeal.  The evidence fully supports the jury's finding of actionable negligence and emancipation.

The sole question, therefore, requiring decision is whether a child, who has attained majority and has become emancipated, may sue parents for an injury which occurred during the unemancipated infancy?

The answer to this determinative question, however, gives immediate rise to the basic query, namely, may an unemanci-

pated infant sue parents, in tort, for actionable negligence which occurred during such infancy?

Of recent years this type of suits have greatly increased in number. This is undoubtedly due to the many automobile cases; and even more so, perhaps, it is due to the common practice of automobile operators and owners carrying liability indemnity insurance to protect themselves against the civil consequences of actionable negligence.

The two questions are so interdependent that it is advisable, if not altogether necessary, even at the risk of being characterized as *obiter dictum,* of considering and deciding the basic question stated as aforesaid.

The law of Maryland, where the accident occurred was not proved. The inference therefore is that the common law still prevails there. *Bodine* v. *Berg,* 82 *N. J. L.* 662.

In our state there is no statutory law on the subject. Nor has this court heretofore decided the question. Thus we look to the common law. The latter, notwithstanding all criticism to the contrary, gives no such right of action. And the great weight of modern authority adheres to the common law rule. It is frequently stated by the authorities that the rule had its beginning in the interest of the peace and tranquility of the family and of society; in the preservation of the family relationship; and is in keeping with and supported by a sound public policy.

Little, if anything, appears on the subject prior to 1891. But in that year, in the case of *Hewlett* v. *George,* 68 *Miss.* 703; 9 *So. Rep.* 885; 13 *L. R. A.* 682, the court, in reversing a judgment for the child in a suit brought against the mother on a charge of false imprisonment by maliciously confining the child for ten days in an insane asylum, said:

"So long as the parent is under obligation to care for, guide and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society, and of the families composing society, and a sound and public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suf-

fered at the hands of the parent. The state, through its crimi-nal laws, will give the minor child protection from parental violence and wrongdoing, and this is all the child can be heard to demand."

The philosophy for this principle of law finds perfect expression in the case of *Small* v. *Morrison,* 185 *N. C.* 577; 118 *S. E. Rep.* 12; 31 *A. L. R.* 1135, where the court held that an unemancipated infant cannot maintain an action against his father for negligent injuries, and, among other things, said:

"There are some things that are worth more than money. One of these is the peace of the fireside and the contentment of the home, for of such is the kingdom of righteousness. While the family relation of parent and child exists, with its reciprocal rights and obligations, the latter should not be taught 'to bite the hand that feeds it,' and no such action as the present should be entertained by the courts. As the twig is bent, the tree will incline; and it is the inexorable law of nature that whatsoever a man soweth, that shall he also reap. Grapes are not gathered from the thorn bush, nor figs from the thistle. It is doubtful if any age promises a sweeter remembrance than that of a happy childhood, spent in the lovelight of kindly smiles and in the radiance of paren-tal devotion. 'Honor they father and thy mother that thy days be long upon the land which the Lord thy God giveth thee' is an injunction from on high, and it contains as much truth to-day as it did under the Mosaic dispensation. Verily, it is a command of Holy Writ—good for all time. In youth the currents of life are prodigal in their racing course, and we should be slow to encourage or to permit a minor, in the household of its parents, unemancipated and who has not yet arrived at the age of discretion, acting only upon the advice of a 'next friend' to run the risk of losing a priceless birth-right and a rich inheritance in an effort to gain for the moment a mere mess of pottage or a few pieces of silver. If this restraining doctrine were not announced by any of the writers of the common law, because no such case was ever brought before the courts of England, it was unmistakably and indelibly carved upon the tablets of Mount Sinai."

Many are the cases which support this basic principle of law and the underlying philosophy thereof. The following are but a few of the many cases which are illustrative: *McKelvey* v. *McKelvey,* 111 *Tenn.* 388; 77 *S. W. Rep.* 664; 64 *L. R. A.* 991; *Roller* v. *Roller,* 37 *Wash.* 242; 79 *Pac. Rep.* 788; 68 *L. R. A.* 893; *Wick* v. *Wick,* 192 *Wis.* 260; 212 *N. W. Rep.* 787; 52 *A. L. R.* 1113; *Matarese* v. *Matarese,* 47 *R. I.* 131; 131 *Atl. Rep.* 198; 42 *A. L. R.* 1360; *Mesite* v. *Kirchstein,* 145 *Atl. Rep.* 753; *Sorrentino* v. *Sorrentino,* 222 *App. Div.* 835; 227 *N. Y. Supp.* 907; *Smith* v. *Smith,* 81 *Ind. App.* 566; 142 *N..E. Rep.* 128. In our own state they were followed by Circuit Court Judge Ackerson in *Mannion* v. *Mannion* (1925), 3 *N. J. Mis. R.* 68; 129 *Atl. Rep.* 431; by Circuit Court Judge Smith, in *Damiano* v. *Damiano* (1928), 6 *N. J. Mis. R.* 849; 143 *Atl. Rep.* 3, and also by present Vice-Chancellor Stein, while a judge of the Common Pleas Court, in *Goheen* v. *Goheen* (1931), 9 *N. J. Mis. R.* 507; 154 *Atl. Rep.* 393. And the legislature has not seen fit to interfere. In the case of *Goldstein* v. *Goldstein,* 4 *N. J. Mis. R.* 711; 134 *Atl. Rep.* 184, and *Steliga* v. *Metropolitan Casualty Insurance Co.,* 113 *N. J. L.* 101; 172 *Atl. Rep.* 793, the question was merely whether the infant had become emancipated. See, also, 20 *R. C. L.* 631; 46 *C. J.* 1324, § 159-2, and cases collated in the annotation in 71 *A. L. R.* (at *p.* 1071).

But neither this principle of law nor its philosophy has been permitted to escape challenge or criticism. With great force and logic it is asserted by the minority, that the peace, tranquility and preservation of the family relationship and of society is equally subject to disturbance and disruption when an infant sues parents, as it may through another, to recover property rights. In *Small* v. *Morrison, supra,* this criticism is answered that the child's right in property matters rests upon an entirely different principle of law. It is this: "The law will not permit a parent, or other, to take the property of a minor child, or anyone else, hold it unlawfully, and thus profit by his own wrong. This would be an unjust enrichment which the law cannot condone. *Walker* v. *Crowder,* 37 *N. C.* (2 *Ired. Eq.*) 478," cited on page 1142, 31 *A. L. R.*

In that respect, concurring with the majority opinion in Small v. Morrison, Judge Hoke says, "the child is regarded as a separate entity and a different principle prevails."

Another answer to the same challenge and criticism is contained in the case of *Mesite* v. *Kirchstein, supra* (at *p.* 755 of 145 *Atl. Rep*). The question is asked—"Are the property rights of a minor of more importance to him than the rights of his person?" And the answer given is—"No, but their protection will not disturb the family relation as will the action for personal injuries for every form of negligence as well as for batteries."

For a denial that there ever was a common law rule that a minor child cannot sue its parent, in tort, and for a most exhaustive review of the authorities generally on the subject read the case of *Dunlap* v. *Dunlap* (*N. H.*), 150 *Atl. Rep.* 905; 71 *A. L. R.* 1055. See annotation 71 *Id.* (at *p.* 1071). A very replete review and suggested solution of the subject by Professor Wm. E. McCurdy is to be found in volume XLIII-No. 7, *Harvard Law Review,* beginning with page 1056.

This court, as already stated, has not passed on either question. For us it is one of first impression. We are, therefore, free to adopt what, in our opinion, is the sounder view. We think that view is the one adopted and followed by the great weight of modern authority, namely, that an unemancipated infant may not sue parents, in tort, for actionable negligence which occurred during such infancy.

The same reasons and logic which impel the denial of the right of an unemancipated infant to sue parents when the suit is brought for injuries sustained during such infancy likewise impels us to deny the right of a cause of action when the suit is brought by a child, after majority and emancipation, for actionable negligence of parents which occurred during the unemancipated infancy of the child. The right of action, if any, is determined as of the day of the accident. It either did or did not exist as of that day. And if not, the majority and emancipation of the child could not, and did not, create a non-existent cause of action. Compare *Smith* v. *Smith, supra.*

In the last cited case, the law on the subject is summarized as follows:

"It is well established that a minor child cannot sue his parents for a tort. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. An unkind and cruel parent may and should be punished at the time of the offense, if an offender at all, for forfeiting custody and suffering criminal penalties, if need be; *but for the minor child who continues, it may be for long years at home and unemancipated, to bring a suit, when arrived at majority, free from parental control and under counter-influences, against his own parent, either for services accruing during infancy or to recover damage for some stale injury, real or imagined, referable to that period, appears quite contrary to good policy.* And this rule has been applied, not only in cases of excessive punishment, or other assault and battery, but to the most extreme case possible, that of the ravishment of a minor daughter by her father. 20 *R. C. L.* 631." (Italics ours.)

Our answer, therefore, to the determinative question is—no.

We are not, however, to be understood as holding that a child may not sue its parents, in tort, for actionable negligence which arose after the child became of age and was fully emancipated.

The refusal to nonsuit or direct a verdict was reversible error.

Judgment is reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Heher. Perskie, Van Buskirk, Hetfield, Dear, Wells, Wolfs-Keil, Rafferty, JJ. 16.