15 N.J. Super. 429 (1951)
83 A.2d 639
THOMAS KING, AN INFANT, BY ROBERT KING, HIS GUARDIAN AD LITEM, AND ROBERT KING, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
MICHAEL PATRYLOW, HENRY PATRYLOW AND KATHERINE PATRYLOW, TRADING AS PATRYLOW'S GROVE & COCKTAIL BAR, DEFENDANTS-APPELLANTS, AND WALTER PATRYLOW, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1951.
Decided September 28, 1951.
*431 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Alfred Brenner argued the cause for respondents (Mr. Charles Bressler, attorney).
Mr. Mark Townsend argued the cause for appellants, Michael Patrylow, et al. (Messrs. Townsend & Doyle, attorneys; Mr. Paul Aaroe on the brief).
Mr. Felice Castelli argued the cause for appellant, Walter Patrylow (Mr. Earl Pollock, attorney).
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
Defendants appeal from a judgment for plaintiffs entered upon a jury verdict in the Law Division, Hudson County.
Several grounds of alleged error are argued, but we have occasion to consider only the trial court's denial at the close of the case of defendants' motion for judgment and alleged error in the charge.
Patrylow's Grove & Cocktail Bar, the defendant partnership, operates a picnic grove in Kenilworth where it maintains *432 a shooting gallery for its patrons under the charge of its employee, the defendant Walter Patrylow. On March 7, 1949, the infant plaintiff, age 11, attended a picnic at the grove with his mother. He was attracted to the shooting gallery and spent much of his time watching patrons shoot at the targets. The rifles were chained to the counter at the front of the gallery. Expended shells fell to the ground on either side of the counter. At about nine o'clock in the evening Patrylow was making preparations to close for the night. It was his practice at such times to shoot each rifle to empty it of undischarged bullets. The boy asked for and was granted permission by Patrylow to enter the gallery to pick up used shells from beneath the inner side of the counter. Patrylow opened a side door to let him in. The boy moved along the counter to a point three or four feet from the door and, with his right hand resting on the top of the counter, leaned over to gather shells with his left hand. Patrylow, who was outside the counter, picked up the rifle lying at the end of the counter between the door and the boy. He knew that the boy was just to his right "two or three feet from where the gun actually was." He aimed the gun "toward the ground," "not entirely to the left," although admitting there was sufficient space to the left to aim it away from where the boy was and also that he might have aimed it toward the top of the range or at the targets at the rear above the level of the counter. The bullet struck the boy's right hand as it rested on the counter.
We have summarized the evidence in its aspect most favorable to the boy's claim, as we must when determining whether a jury question was presented upon defendants' motion for judgment.
Liability was predicated upon allegations that the boy was a licensee within the gallery and was wounded by Patrylow's willfully injurious act.
Defendants argue that liability for willful injury can be found only where positive intent of the actor to do harm to the plaintiff appears, and contend that they were entitled to *433 judgment on their motion because plaintiffs conceded during the trial that Patrylow did not intend to shoot the boy.
There was no error. While no duty is owing to a mere licensee except to abstain from acts "willfully injurious" (Sohn v. Katz, 112 N.J.L. 106 (E. & A. 1934); Faggioni v. Weiss, 99 N.J.L. 157 (E. & A. 1923)), nevertheless, an act may be "willfully injurious" whether or not there is ill will toward, or a positive intent to injure, the person harmed. True, conduct which is willful, unlike conduct which is merely negligent, does import intent. "Negligence and willfulness are mutually exclusive terms which imply radically different mental states. `Negligence' conveys the idea of inadvertence as distinguished from premeditation or formed intention." 38 Am. Jur. Negligence, sec. 48, p. 692. The element of intent to harm the plaintiff is supplied, however, under the rule in effect in this State (other jurisdictions follow different principles, see Restatement, Torts, Scope Note, secs. 500-503 (1934)) by a constructive intention as to the consequences, which, entering into the intentional act which produces the injury, the law imputes to the actor regardless of whether or not he intended to harm the person, so that a charge which otherwise would be mere negligence, becomes, by reason of reckless disregard of the safety of the other, a willful wrong. Baines v. Collins, 310 Mass. 523, 38 N.E.2d 626 (Sup. Jud. Ct. Mass. 1942).
The emphasis is upon the reckless indifference to consequences of the deliberate act or omission in the face of known circumstances and the high degree of probability of producing the harm. "To establish a willful or wanton injury it is necessary to show that one with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result." Staub v. Public Service Ry. Co., 97 N.J.L. 297 (E. & A. 1922). The definition adopted *434 by the Restatement is substantially the same but is designated conduct "in Reckless Disregard of the Safety of Another" rather than as conduct "willfully injurious." It reads: "The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." (Restatement, supra, sec. 500.)
The suggestion of the former Supreme Court in Rose v. Squires, 101 N.J.L. 438 (1925), that no legal duty to a licensee is violated unless there be a positive intent to do injury to him was not regarded with favor by the Court of Errors and Appeals but was expressly disapproved in all three opinions by members of that Court upon affirmance of the result below. 102 N.J.L. 449 (1925). Both opinions for affirmance quoted the language above from the Staub case as the correct statement of the law.
The defendant partnership also sought dismissal as to it on the ground that as master it is not liable for the willful torts of its servant. We think this also was a proper question for jury determination on the evidence in the case. The liability of the master for the willful tortious acts of the servant extends to every case where the act of the servant is committed with a view to the furtherance and discharge of his master's business and within the scope and limits of his employment. Smith v. Bosco, 126 N.J.L. 452 (E. & A. 1941); Holler v. Ross, 68 N.J.L. 324 (E. & A. 1902); Moore v. Camden & Trenton Railway Co., 74 N.J.L. 498 (E. & A. 1907); Gindin v. Baron, 11 N.J. Super. 215 (App. Div. 1951).
There must, however, be a new trial, because two distinct propositions were charged by the court, one correct and the other erroneous, neither of which was expressly withdrawn. *435 It will not be presumed that the jury followed the correct instruction, but the judgment will be reversed. The court's instructions were:
"* * * under our law the defendants owe a different duty to an invitee than to a licensee or trespasser. There is no need for me to tell you the duty owing to an invitee, because the question of invitee, as I have stated, is not in this case. But the duty owing to a licensee or a trespasser is to exercise reasonable care to avoid creating any conditions on the premises which, to one of ordinary prudence and foresight, could reasonably be held to be an instrumentality for harm.
The first question, I believe  one of the questions that you will have to determine  is, Were the defendants wantonly negligent under all the circumstances in this case, considering all the testimony and the evidence? Was proper care and foresight used toward the boy or was there wanton negligence?
Because of the fact that a gun was used by the defendant Walter Patrylow, I should say to you that persons are bound to use great care in the use of firearms or materials otherwise dangerous or destructive. Our courts have said that the duty which a person lawfully carrying firearms owes to others is not different from that which is imposed on all who have control of any hurtful thing, except in the degree of care to be exercised. As firearms are more than ordinarily dangerous when loaded, those who handle them are bound to use more than ordinary care to prevent injury to others.
Our courts have stated that wanton negligence is constituted by the party doing the act or failing to act, without having the intent to injure, being conscious from his knowledge of existing circumstances and conditions that his conduct will naturally and probably result in injury. Our courts have also said that to establish a willful or wanton injury it is necessary to show that one with knowledge of existing conditions and conscious from such knowledge that injury will likely or probably result from his conduct, with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result. Now, this definition is quite similar to the one I read before this, with the exception that here the word `intentional' is used; and I should say to you that our courts have decided that the question of intent might be spelled out from a reckless indifference to the consequences.
You have three or four stages in this case that I think logically you should come to and decide as you go along in your deliberations. First, was Walter guilty of wanton negligence that produced the injury to Thomas King? If he was not, then your verdict should be that of no cause of action, in favor of the defendants; * * *." (Italics supplied.)
*436 Since the plaintiffs predicated liability of the defendants upon violation of the duty owed a licensee to refrain from acts willfully injurious, the distinction between merely negligent misconduct and misconduct within the test of the Staub case was vital. The italicized portions of the charge are more nearly descriptive of the duty of ordinary care owing an invitee and are clearly erroneous in respect of the conduct of Patrylow in relation to the boy as a licensee. The giving of the correct instruction in language of the Staub case did not cure the error; at best, the charge tended to confuse the jury and to make it difficult for the jury to decide which instruction was right. In such circumstances we are required to reverse. Marzotto v. Gay Garment Co., 11 N.J. Super. 368, 476 (App. Div. 1951), affirmed, per curiam, 7 N.J. 116 (1951); Pucci v. Weinstein, 8 N.J. Super. 247 (App. Div. 1950); State v. Tapack, 78 N.J.L. 208 (Sup. Ct. 1909); Collins v. Central R.R. Co. of N.J., 90 N.J.L. 593 (E. & A. 1917); Brown v. Public Service Ry. Co., 98 N.J.L. 747 (E. & A. 1923).
Reversed with direction for a new trial. Costs to abide the event.