MARY ELIZABETH HASTINGS, BY AGNITA HASTINGS, HER GUARDIAN *AD LITEM*, PLAINTIFF-APPELLANT, v. EDMUND HASTINGS, DEFENDANT-RESPONDENT.

Argued May 9, 1960—Decided July 18, 1960.

*Mr. Sam Weiss* argued the cause for plaintiff-appellant (*Messrs. Eisenstein and Eisenstein,* attorneys; *Mr. Weiss,* of counsel).

*Mr. Gustave A. Peduto* argued the cause for defendant-respondent (*Mr. Charles A. Rooney,* attorney; *Mr. Peduto* on the brief).

The opinion of the court was delivered by

HALL, J. This appeal presents the single clear-cut question whether an unemancipated minor child may maintain a cause of action against her father for personal injuries caused by his simple negligence in the driving of an automobile in which she was a passenger when he was insured by a policy of liability insurance obligating his insurer to pay all sums for which he was legally obligated as damages because of injury to others arising out of the ownership, maintenance and use of the car.

The child was four years of age at the time of the mishap and had lived with her parents since birth. Her father was her sole support. The suit, prosecuted by her mother as guardian *ad litem,* was instituted in the Bergen County District Court. The complaint alleged that injuries to face and head resulted from the father's operation of the car in a careless manner so that he ran into the rear of a

vehicle in front of him, and specifically set forth the insurance coverage. The insurer was not made a party. There is no suggestion the car was being driven for business rather than family purposes.

The trial judge granted defendant's motion for summary judgment before answer filed, and plaintiff's appeal was certified on our own motion before argument in the Appellate Division.

There is no doubt that the ruling below is strictly in accord with the present law in this State as laid down in the leading case of *Reingold v. Reingold,* 115 *N. J. L.* 532 (*E. & A.* 1935). See also *Radelicki v. Travis,* 39 *N. J. Super.* 263 (*App. Div.* 1956). It may be noted, in view of the significance which plaintiff attaches to the actual existence of insurance in the instant case, that the court in *Reingold* expressly mentioned the common practice of carrying automobile liability insurance, showing it was not unaware of the bearing of that factor on the problem.

Plaintiff frankly concedes the controlling authority of *Reingold* and laudably further admits that no case holding to the contrary, where only simple negligence in a purely family relationship was involved, can be found in any other jurisdiction. Our own research confirms this and therefore extensive citations of outside authority become unnecessary. See cases collected in *Annotation,* 19 *A. L. R.* 2d 423, 439 (1951). See also *Prosser, Law of Torts* (2d ed. 1955), § 101, *n.* 61 and 77; *Harper and James, The Law of Torts,* § 8.11, *n.* 6 and 7 (1956). The case probably most often relied upon, as here, in contending for the opposite rule is *Dunlap v. Dunlap,* 84 *N. H.* 352, 150 *A.* 905, 71 *A. L. R.* 1055 (*Sup. Ct.* 1930). There the factual situation was one of employment of the child by the defendant father in the latter's business, and an injury sustained in the course of employment. When a case exactly like ours came before the New Hampshire court, however, it refused to follow the reasoning and rationale of *Dunlap* and specifically held the child could not maintain the action. *Levesque v.*

*Levesque,* 99 *N. H.* 147, 106 *A. 2d* 563 (*Sup. Ct.* 1954). See also *Worrall v. Moran,* 101 *N. H.* 13, 131 *A. 2d* 438 (*Sup. Ct.* 1957).

Plaintiff's position is that we should now overturn the rule, and sole reliance in support of the contention is placed on expressions of theoretical opinion by text writers and authors of law review articles and notes during the past 30 years. While this court has not been hesitant or backward in overruling judge-made principles and concepts that have become outmoded in the light of modern thought, knowledge and conditions (see, for example, in the present term in the tort field, *Faber v. Creswick,* 31 *N. J.* 234 (1959); *Smith v. Brennan,* 31 *N. J.* 353 (1960); *Duffy v. Bill,* 32 *N. J.* 278 (1960); *McAndrew v. Mularchuk,* 33 *N. J.* 172 (decided June 28, 1960)), we have done so only when we have been thoroughly convinced that there is no longer any sound reason to retain the old rule and that essential justice compels a change. *Sydney Grossman Hotel Corporation v. Lakewood Water Co.,* 27 *N. J.* 91 (1958). We,, along with every other court of last resort apparently, are not so convinced in the present situation.

The question is not one of the absence of a duty of reasonable care owed by the father to his child, but rather of immunity from suit thereon. Matters of immunity must be determined, in the absence of specific legislation, on the basis of policy or, perhaps more accurately, on the weighing of competing policies. Here we think the weight of a combination of policies dictates the result. In situations other than the precise one before us, consideration of the policies in the light of the specific facts may lead to different results, but it will be time enough to announce a conclusion on them when the occasion is specifically presented to us.

A succinct expression of the policies which have led other courts to reach the result we adhere to in this case is, found in a recent opinion of the Pennsylvania Supreme Court where it was called upon to decide the precise question for

the first time. The case is *Parks v. Parks*, 390 *Pa.* 287, 135 *A.* 2d 65 (*Sup. Ct.* 1957), where it was said:

"It is a rule based on the sound principle of public policy to promote family unity and avoid family discord and disturbance, it prevents possible collusive action between parent and child in situations where the liability of either parent or child is covered by insurance and it is in line with the great weight of judicial authority represented by practically every court of every state in this country." (135 *A.* 2d at *p.* 71).

It will be recalled that we are dealing with a situation where parents and children are living together under the ordinary conditions of family life and the charge is one of mere negligence. Such a claim is a very thin thing. It implies no intentional or even thoughtless disregard of intrafamily responsibilities and benefits, which in the last analysis rest not on cold rules of law but on mutual love and affection. Legalistically speaking, under these circumstances simple negligence amounts to no more than a very slight breach of a parental duty, and the well established rule of law is that a parent should not ordinarily be accountable to the child in money damages in such a situation. See *Dunlap v. Dunlap, supra* (150 *A.,* at *p.* 909). It appears quite unseemly, to say the least, to suggest that a mere act or omission within the family circle amounting to no more than carelessness, which the one to blame would do almost anything to avoid, should require the payment of money by one member of the group to another. We believe that true family life, so important to our civilization, should not include among its foundation stones the concept of recompensable fault between parents and unemancipated children. The idea seems utterly foreign, whether a family member or some third party is compelled to produce the money. And it should not be overlooked that the principle plaintiff asks us to establish would be applicable to injuries suffered in the home as well as in the family car and that an injured parent would also have to be permitted to sue his child for the latter's negligence.

If the negligent parent were uninsured, so that judicial process in a real adversary proceeding would compel him to pay personally the child's recompense, which would necessarily have to come from the family estate and exchequer created and intended for the benefit of all members, the likelihood of the disruption of family unity and discipline is obvious. Of course, the injured child knows nothing of legal duties and remedies and would have no idea of suing his parent. That decision has to be made for him by someone else, which in the usual situation is the other parent, the spouse of the one to be sued and to pay after a public litigation arraying the family members against each other.

██ But we all know that realistically such actions are never thought of, let alone commenced, unless there is an insurance policy, automobile or comprehensive personal liability (which ordinarily indemnifies against the legal consequences of acts or omissions of all members of the family), on the basis of which money can be sought to be obtained. Such contracts are not commitments to pay in all events, such as are policies providing for medical payments and weekly indemnity in case of accident or hospitalization and medical and surgical treatment, now so commonly held by families or individual members, but depend for their operative effect on the insured being found legally at fault. Again, practically speaking, an action is not going to be commenced unless the family member to be sued is in effect prepared to say that he was negligent. The decision for the child to sue will be determined within the family circle and obviously the proposed defendant is going to participate in making it, quite an unorthodox situation under our basic concept of adversary litigation, to say the least. The risk of collusion is indeed a very great and human one, when the insured's own flesh and blood and the family pocketbook are concerned. It is unlikely in most instances that the insurance carrier, whose interests are the only ones really at stake, can adequately defend itself. The defendant under the insurance contract has the obligation to cooperate with

the insurer, an obligation which, unless there is absolutely no question of his sole or concurrent and proximate negligence (a somewhat rare situation in everyday life), he will find it difficult to fulfill and at the same time further the successful outcome of the suit for the benefit of the child (and incidentally his own), which in reality is what he wishes to accomplish. The possibility of collusion, and the corollary of breakdown of most desirable individual integrity within the family frequently involving children as well, is so great in so many cases of the kind before us that we feel constrained to conclude, in conjunction with the other considerations previously mentioned, that sound public policy precludes their prosecution. It may be urged that the possibility of similar fraud also exists in other situations where our law permits suits, as in actions by guest against host, but we are convinced that the danger is not so great and the matter of integrity within the family is not involved.

While our Legislature has not acted directly on the question, we believe some measure of approval by that branch of the policy to which we adhere is found negatively in the fact of its inaction since the decision in *Reingold* and affirmatively in the withholding of the benefits of the Unsatisfied Claim and Judgment Fund law to a plaintiff who has obtained a judgment arising out of a motor vehicle accident against his uninsured spouse, parent or child. *N. J. S. A.* 39:6–70; *L.* 1952, *c.* 174, § 10, as amended. It is also interesting to note that in at least one state, New Hampshire, bills were introduced in the Legislature (after the decision in *Levesque, supra*) to permit the prosecution of a suit by an unemancipated minor against his parent for negligence and were defeated. See *Worrall v. Moran, supra* (131 *A.* 2d, at *p.* 439).

The judgment is affirmed.

JACOBS, J. (dissenting). The just progress of the law is needlessly retarded by the failure of judges to deal with modern-day realities as they find them. In today's society,

practically every man with any sense of responsibility carries suitable insurance coverage on the automobile he owns and operates.[1] He does this not only to protect himself against the consequences of the neglectful operation of his automobile, but also because he wants to make certain that anyone injured by the neglect is fairly compensated for his injury. His insurance policy is in broad terms and covers injuries to others, including his passengers who may be close friends and relatives and their wives and children. So long as the wives and children are those of his friends and relatives the insurance is effective, but under the majority's holding here and in *Koplik v. C. P. Trucking Corp.,* 27 *N. J.* 1 (1958), it becomes meaningless when his own wife and children are the injured. It seems to me that this result lacks the support of any sound reason or policy; it has been universally condemned in the thoughtful professorial and student writings on the subject. See *Harper & James, The Law of Torts* §§ 8.11, 13.4 (1956); *Prosser, Law of Torts* § 101 (2d ed. 1955); *McCurdy, "Torts between Persons in Domestic Relation,"* 43 *Harv. L. Rev.* 1030 (1930); *Seavey, "Torts,"* 1958 *Annual Survey of American Law, p.* 487; 26 *Tenn. L. Rev.* 561 (1959); 58 *Colum. L. Rev.* 576 (1958); 19 *U. Pitt. L. Rev.* 681 (1958); 38 *Cornell L. Q.* 462 (1953); 10 *Wash. & Lee L. Rev.* 121 (1953); 39 *Va. L. Rev.* 389 (1953); 7 *Wyo. L. J.* 199 (1953); 2 *De Paul L. Rev.* 119 (1952); 64 *Harv. L. Rev.* 1208 (1951); 4 *Vand. L. Rev.* 377 (1951); 7 *Fordham L. Rev.* 459 (1938); 79 *U. Pa. L. Rev.* 80 (1930); *cf.* 28 *U. Cinc. L. Rev.* 540 (1959); 33 *St. John's L. Rev.* 310 (1959); 31 *Temp. L. Q.* 233 (1958); 3 *Vill. L. Rev.* 577 (1958); 9 *Syracuse L. Rev.* 346 (1958); 55 *Mich. L. Rev.* 463 (1957); 30 *So. Cal. L. Rev.* 368 (1957); 34 *Chi. Kent L. Rev.* 333 (1956); 51 *Nw. U. L. Rev.* 610 (1956); 35 *B. U. L. Rev.* 205 (1955); 7 *Okla. L. Rev.* 238 (1954);

---

[1]Departmental figures indicate that between June 1, 1959 and April 30, 1960, 93.33% of all New Jersey registrants were insured.

2 *Buffalo L. Rev.* 166 (1952); 5 *S. C. L. Q.* 294 (1952); 5 *Ala. L. Rev.* 173 (1952); 6 *U. Miami L. Q.* 617 (1952); 1 *Catholic U. L. Rev.* 161 (1951); 26 *Ind. L. J.* 465 (1951); 22 *Miss. L. J.* 174 (1951); 23 *Rocky Mt. L. Rev.* 225 (1951); 30 *Ore. L. Rev.* 86 (1950); 32 *Marq. L. Rev.* 289 (1948); 28 *Geo. L. J.* 430 (1939); 86 *U. Pa. L. Rev.* 909 (1938); 14 *Tenn. L. Rev.* 294 (1936); 11 *N. C. L. Rev.* 352 (1933); 33 *Colum. L. Rev.* 360 (1933); 20 *Calif. L. Rev.* 342 (1932); 7 *Notre Dame Law.* 259 (1932); 16 *Cornell L. Q.* 386 (1931); 15 *Minn. L. Rev.* 126 (1930). See also *Dunlap v. Dunlap,* 84 *N. H.* 352, 150 *A.* 905, 71 *A. L. R.* 1055 (*Sup. Ct.* 1930); *Lusk v. Lusk,* 113 *W. Va.* 17, 166 *S. E.* 538 (*Ct. App.* 1932); *Worrell v. Worrell,* 174 *Va.* 11, 4 *S. E. 2d* 343 (*Ct. App.* 1939); and *Wick v. Wick,* 192 *Wis.* 260, 212 *N. W.* 787, 788, 52 *A. L. R.* 1113 (*Sup. Ct.* 1927), where Justice Crownhart had this to say in dissent:

"Times have. changed. Practically no business is now carried on without insurance to protect the owner against his negligence whereby his employees may be damaged. Practically all owners of automobiles protect themselves in the same way. Certainly all prudent men should guard against liability in such cases. Should a man think less of his own flesh and blood than of his employees or the stranger on the highway? And if he is thoughtful enough to insure against misfortune due to his negligence to the public at large, must the court step in and deny the infant member of his family the same chance in life as is possessed by the public? I think not." 212 *N. W.,* at *p.* 790

Nothing in the English common law precluded an action by a minor who had been wronged by his parent. See *Prosser, supra,* at *p.* 675; *McCurdy, supra,* at *p.* 1059; cf. *Fidelity & Cas. Co. v. Marchand* [1923] 35 *Que. K. B.* 5, 4 *D. L. R.* 913, reversed on other grounds, [1924] *Can. Sup. Ct.* 86, 4 *D. L. R.* 157 (1923); *Young v. Rankin* [1934] *Sess. Cas.* 499 (*Scot. 2d Div.*). And until the decision of the Mississippi Supreme Court in *Hewlett v. George,* 68 *Miss.* 703, 9 *So.* 885, 13 *L. R. A.* 682 (*Sup. Ct.* 1891), there was no case in the United States which precluded such

an action. In *Hewlett* the court refused to allow an unemancipated daughter to sue her mother for damages resulting from the alleged malicious imprisoning of the daughter in an insane asylum. It cited no authority for its holding but took the position that in the interests of the peace and tranquility of the family, a minor child should, as a matter of public policy, be prohibited from suing his parent for personal injuries. Later state court cases have followed the *Hewlett* decision, and in New Jersey *Reingold v. Reingold,* 115 *N. J. L.* 532 (*E. & A.* 1935) held that in order to preserve the family relationship, a minor child may not sue for a personal wrong committed by his parent. The court there had no occasion to and did not deal with a complaint which alleged, as here, that the wrongdoing parent was fully covered by automobile liability insurance; it is perfectly clear that where there is such insurance the action cannot, in any realistic sense, be said to endanger the family relationship or offend any policy based on its preservation. Thus, in *Lusk v. Lusk, supra,* a unanimous court, following the lead of Chief Justice Peaslee's opinion for the New Hampshire Supreme Court in *Dunlap v. Dunlap, supra,* permitted an action by a minor daughter against her father for injuries sustained in a school bus which was owned and operated by the father; in the course of its opinion the court distinguished the ordinary parental immunity rule, saying:

"But a different situation arises where the parent is protected by insurance in his vocational capacity. The rule followed in the *Securo Case* concedes the commission of a civil wrong on the child by the parent, but palliates the wrong (in case of passive negligence) in the interest of parental discipline and control and of domestic harmony. A wise provision when so confined and where pertinent to the case. *McCurdy*, 43 *Harv. L. R.* 1079, § 5. But as was said in the case of *Dunlap v. Dunlap*, 84 *N. H.* 352, 150 *A.* 905, 910, 71 *A. L. R.* 1055, 'The law does not make fetishes of ideas,' and we must not exalt this rule above ordinary common sense. A maxim of the common law (and of the ages for that matter) is when the reason for a rule ceases the rule itself ceases (*cessante ratione legis cassat ipsa lex*). There is no reason for applying the rule in the instant case. This action is not unfriendly as between the daughter and the father. A recovery by her is no

loss to him. In fact, their interests unite in favor of her recovery, but without hint of 'domestic fraud and collusion' (charged in some cases). There is no filial recrimination and no pitting of the daughter against the father in this case. No strained family relations will follow. On the contrary, the daughter must honor the father for attempting to provide compensation against her misfortune. Family harmony is assured instead of disrupted. A wrong is righted instead of 'privileged.' " 166 *S. E.*, at *pp.* 538-539

See *Dunlap v. Dunlap, supra,* 150 *A.*, at *pp.* 912, 913; *Worrell v. Worrell, supra,* 4 *S. E. 2d,* at *p.* 346; *cf. Rozell v. Rozell,* 281 *N. Y.* 106, 22 *N. E. 2d* 254, 257, 123 *A. L. R.* 1015 (*Ct. App.* 1939).

Those who still oppose personal injury actions by children against their fully insured parents generally recognize the total inapplicability of any policy based on the preservation of the family relationship, but urge instead the danger of fraud and collusion. As I noted in my dissenting opinion in *Koplik v. C. P. Trucking Corp., supra,* 27 *N. J.,* at *p.* 15, there is opportunity for fraud and collusion in many legal proceedings, but our system of courts and juries is well designed to seek them out and the opportunity for fraud and collusion clearly furnishes no just or moral basis for precluding honest and meritorious actions. Furthermore, as parents who seek to instill decent principles of integrity and ethics in their offspring will readily realize, there would be greater restraint and less danger of fraud and collusion between the minor child and his parent than there would be between the parent and his adult friends and relatives who admittedly may maintain actions when injured by the parent's negligent operation of his automobile. In *Rozell v. Rozell, supra,* the Court of Appeals of New York rejected an attack on the right of a 12-year-old child to bring an action against his 16-year-old sister who injured him while driving an automobile covered by liability insurance; in the course of his opinion for the court Judge Rippey said:

"But I am unwilling to admit that sanction to the maintenance of such an action between brother and sister is any more of an incentive to fraud than when a similar action was sanctioned between

husband and wife, between an emancipated son and his father, between grandmother and grandchild, between owner and guest, or between intimate friends. No warrant is found for any prediction that brothers and sisters will flock into the courts on fictitious claims through mere judicial recognition of the right of one to sue the other in personal injury cases. Common honesty inherent in the family unit presents an effective barrier. If it should appear that there is any foundation for the suggestion, a means of protection may be found in diligence on the part of the insurance carriers to ferret out and expose the fictitious claims and reliance may be placed on our courts and juries to detect and prevent a fraud." 22 N. E. 2d, at p. 257

See *Midkiff v. Midkiff, Va.,* 113 S. E. 2d 875, 878 (Ct. App. 1960); *Borst v. Borst,* 41 Wash. 2d 642, 251 P. 2d 149, 155 (Sup. Ct. 1952); cf. *Emery v. Emery,* 45 Cal. 2d 421, 289 P. 2d 218, 224 (Sup. Ct. 1955).

The only other argument advanced against the child's action worthy of mention here (see *Prosser, supra,* at p. 676; *Dunlap v. Dunlap, supra,* 150 A., at p. 909) is that it may undermine parental authority and discipline. Whatever force this argument may have on other types of action, it clearly has no bearing on the type of action instituted in the instant matter. In *Borst v. Borst, supra,* 251 P. 2d, at p. 153, the Washington Supreme Court, in upholding an action by a minor child against his father for personal injuries sustained when the child was run over by his father's automobile which was being operated for business purposes, had this to say:

"A second reason frequently advanced in support of the immunity rule is that actions by children against their parents tend to undermine parental authority and discipline. See *Small v. Morrison, supra; Wick v. Wick, supra;* and *Mesite v. Kirchstein, supra.* The field of parental control and discipline covers such matters as the maintenance of the home, chastisement, and no doubt other activities which need not here be delineated. But when the parental activity whereby the child was injured has nothing to do with parental control and discipline, a suit involving such activity cannot be said to undermine those sinews of family life. And even if such a suit should tend to impair family discipline in some degree, that would not seem to call for application of the immunity rule any more than in cases where the child sues to enforce a property right." 251 P. 2d, at pp. 153-154

In *Signs v. Signs,* 156 *Ohio St.* 566, 103 *N. E. 2d* 743 (*Sup. Ct.* 1952), the court similarly held that a minor may maintain an action against his parent for injuries sustained as the result of the parent's negligence in the course of his business operations. The Supreme Court of Ohio, in an opinion by Judge Stewart, made the following pertinent comments:

"In these modern times, with the advent of the motor vehicle and the growing complications of business and industry and where in an industrial age we are living under changed conditions, it would seem a fantastic anomaly that in a case where two minor children were negligently injured in the operation of a business, one of them, a stranger, could recover compensation for his injuries and the other one, a minor child of the owner of the business, could not.

Ordinarily tort actions by minor children against their parents in normal, harmonious families would be rare indeed because of the natural concern of the parents to adequately provide and care for their children, and where such actions were brought there would be a strong indication that there was no harmony or domestic felicity in the family involved to be disturbed.

It seems absurd to say that it is legal and proper for an un-emancipated child to bring an action against his parent concerning the child's property rights yet to be utterly without redress with reference to injury to his person.

It is difficult to understand by what legerdemain of reason, logic or law such a situation can exist or how it can be said that domestic harmony would be undisturbed in one case and be upset in the other." 103 *N. E. 2d,* at *p.* 748

Contract and property actions between minors and their parents are admittedly maintainable in New Jersey as elsewhere throughout the country. See *In re Flasch,* 51 *N. J. Super.* 1, 29 (*App. Div.* 1958), certification denied 28 *N. J.* 35 (1958); *Alling v. Alling,* 52 *N. J. Eq.* 92 (*Ch.* 1893); *Keeney v. Henning,* 58 *N. J. Eq.* 74 (*Ch.* 1899); *Prosser, supra,* § 101; *Harper & James, supra,* § 8.11. As the court indicated in the *Signs* case, it is indeed difficult to justify a judicial approach which readily permits a child to sue his parent where a contract or property right is involved yet disables him from suing where a greater right—"the right of physical integrity"—is involved. *Cf. Albertsworth,*

"Recognition of New Interests in the Law of Torts," 10 Cal. L. Rev. 461, 478 (1922).

In addition to the high court decisions such as *Signs v. Signs, supra; Borst v. Borst, supra; Lusk v. Lusk, supra;* and *Dunlap v. Dunlap, supra,* there are many instances in which courts, displaying awareness of the general harshness and injustice of the parental immunity rule, have departed from it upon slight variations. Thus in *Nudd v. Matsoukas,* 7 Ill. 2d 608, 131 N. E. 2d 525 (*Sup. Ct.* 1956), the complaint alleged that the defendant injured his minor children (who were passengers in his car) when he willfully, recklessly and wantonly drove his car "at an excessive rate of speed on a foggy night, when travelling was difficult because of the wet pavement." The Illinois Supreme Court unanimously held that the action was maintainable because of the charge of "willful and wanton misconduct" (see *Tabor v. O'Grady,* 61 N. J. Super. 446, 451 (*App. Div.* 1960)); many other cases have reached a comparable result although it seems evident that the arguments generally advanced in favor of parental immunity, if they were valid, would be equally valid in the situation described in the *Nudd* case. See *Emery v. Emery, supra; Henderson v. Henderson,* 11 Misc. 2d 449, 169 N. Y. S. 2d 106 (*Sup. Ct.* 1957); *Meyer v. Ritterbush,* 196 Misc. 551, 92 N. Y. S. 2d 595 (*Sup. Ct.* 1949), affirmed 276 App. Div. 972, 94 N. Y. S. 2d 620 (*App. Div.* 1950); *Wright v. Wright,* 85 Ga. App. 721, 70 S. E. 2d 152 (*Ct. App.* 1952); *Cowgill v. Boock,* 189 Or. 282, 218 P. 2d 445, 19 A. L. R. 2d 405 (*Sup. Ct.* 1950); *Mahnke v. Moore,* 197 Md. 61, 77 A. 2d 923 (*Ct. App.* 1951). In *Davis v. Smith,* 253 F. 2d 286 (3 Cir. 1958), the court held that Pennsylvania's parental immunity rule did not preclude an action by a minor child against the estate of his deceased father; in *Burdick v. Nawrocki,* 21 Conn. Super. 272, 154 A. 2d 242 (*Super. Ct.* 1959), the court held that Connecticut's doctrine of parental immunity did not extend to a stepfather who voluntarily stood *in loco parentis;* in *Brown v. Cole,*

198 *Ark.* 417, 129 *S. W. 2d* 245, 122 *A. L. R.* 1348 (*Sup. Ct.* 1939), the court held that the Arkansas doctrine of parental immunity did not extend to an adoptive parent; and in *Wood v. Wood,* 135 *Conn.* 280, 63 *A. 2d* 586 (1948), the Supreme Court of Errors of Connecticut held that it was for the jury to determine whether a minor daughter, who was injured as the result of her father's negligent operation of his automobile, could maintain an action against him on the theory that she was emancipated although she was unmarried and lived at home with her father without paying for bed and board. See *Goldstein v. Goldstein,* 4 *N. J. Misc.* 711 (*Sup. Ct.* 1926).

Outmoded legal doctrines are rarely overturned abruptly for courts seem to prefer to erode them gradually by differentiation, exception and ultimately extinction. See *Cloyes v. Delaware Tp.,* 23 *N. J.* 324, 329 (1957); *Collopy v. Newark Eye and Ear Infirmary,* 27 *N. J.* 29, 37 (1958); *Henningsen v. Bloomfield Motors, Inc.,* 32 *N. J.* 358, 378 (1960); *McAndrew v. Mularchuk,* 33 *N. J.* 172 (1960); *cf. Smith v. Brennan,* 31 *N. J.* 353 (1960), commented upon in 14 *Rutgers L. Rev.* 631 (1960). All this court is now called upon to hold is that a father who carelessly and negligently injures his passenger child while driving his fully insured automobile is not immune from a legal action on the child's behalf. It seems to me that fair and just application of the fundamental common law duty of due care, with tort liability for its breach (see *Collopy, supra,* 27 *N. J.,* at *p.* 32), clearly calls for such a holding; accordingly, I would reverse and remand the matter for trial.

Mr. Chief Justice WEINTRAUB and Mr. Justice SCHETTINO join in this dissent.

*For affirmance*—Justices BURLING, FRANCIS, PROCTOR and HALL—4.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS and SCHETTINO—3.