64 N.J. Super. 589 (1960)
166 A.2d 816
JOHN NOTARE, A MINOR BY HIS GUARDIAN AD LITEM, LYDIA NOTARE, PLAINTIFF-APPELLANT,
v.
LOUIS NOTARE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1960.
Decided December 28, 1960.
*590 Before Judges PRICE, SULLIVAN and FOLEY.
Mr. Sam Weiss argued the cause for plaintiff-appellant (Mr. Jack I. Doppelt, attorney; Mr. Sam Weiss, of counsel).
Mr. Edward C. Hillis argued the cause for defendant-respondent (Messrs. Marley, Winkelried & Hillis, attorneys; Mr. Edward C. Hillis, of counsel and on the brief).
The opinion of the court was delivered by PRICE, S.J.A.D.
In an automobile negligence case plaintiff John Notare, the 15-year-old child of Louis and Lydia Notare, suing by his mother as guardian ad litem, seeks the reversal of a summary judgment entered in the County Court, Law Division, in favor of defendant, his father. On the motion for the summary judgment the parties stipulated "that the infant * * * was on May 31, 1958, the date of the accident alleged in the complaint, and at all times thereafter has continued to be the natural minor and unemancipated child of defendant * * * and is domiciled with and as a member of the household of the said defendant."
The first count of the amended complaint, to which the motion was addressed, alleged that the minor, "an invited passenger" in defendant's automobile, was injured as the result of defendant's "negligent and careless" operation of the vehicle.
*591 Specifically it was charged that the defendant so operated the car as to cause it to "leave the lawful portion of the highway on which he was traveling and to cross over into the lane of traffic traveling in the opposite direction," thereby causing a "violent collision" with "another vehicle." The complaint further alleged that on the date of the accident defendant "was the owner of an effective automobile insurance policy" obligating the carrier, within the monetary limits therein defined, to "pay on behalf of the defendant all damages which he shall be legally obligated to pay because of bodily injury sustained by any person as the result of the operation by the defendant of his automobile * * *."
The second count of the complaint charged that the infant's injuries were caused by the fact that defendant "operated his motor vehicle carelessly and heedlessly, in wilful and wanton disregard of the rights and safety of his invited passenger and in violation of the laws of the State of New Jersey. * * *" The first count's specification of the manner in which the accident happened and the alleged existence of insurance coverage were repeated in the second count.
The trial court held that neither count stated "a legal cause of action."
On the oral argument of the appeal plaintiff's counsel conceded that by virtue of Hastings v. Hastings, 33 N.J. 247 (1960), decided since the appeal was taken, he was without right of recovery on the first count which alleged simple negligence as the basis of recovery. However, he asserts that the second count, charging willfulness and wantonness, sets forth a cause of action.
Initially it is important to note that during the oral argument of the appeal it developed that an interrogatory which had been propounded by defendant, and plaintiff's answer thereto, were respectively as follows:
"1. Without reference to the pleadings, and without stating conclusions of law or fact, set forth the factual contentions upon which plaintiff relies in support of the second count of his complaint, more *592 particularly, what are the facts upon which plaintiff predicates his second count of the complaint that the defendant was guilty of willful or wanton negligence.
Defendant had admitted prior to driving from the seashore to home that he felt extremely tired and sleepy. He was cautioned not to drive under these circumstances by Lydia Notare, but insisted that the family get into the car and that they start for home. While driving he fell asleep behind the wheel, crossed over into the wrong lane of traffic and caused a violent collision."
Counsel stated that the foregoing interrogatory and answer were not presented to the trial court for its consideration on the motion for summary judgment.
Motivated by an expressed desire to have a definitive ruling on the merits of the case, counsel at oral argument jointly requested that our disposition of the appeal should not be limited to a consideration of the allegations contained in the second count, supplemented by the aforesaid stipulation as to the status of the minor in the household, but that (as expressed in plaintiff's supplemental brief), "plaintiff's answer" to the aforesaid interrogatory "shall be treated and deemed as alleging all of the facts supporting the plaintiff's conclusion of wilfulness or wantonness." (Emphasis supplied) In addition, counsel asked that we treat the statements in the aforesaid answer to the interrogatory as if (a) they "had been incorporated into" the complaint "by amendment thereto permitted by the Court below upon motion to such effect"; and (b) instead of reviewing the propriety of the summary judgment, that we consider the issue as if the case had been tried and the proofs consisted of the facts contained in the complaint, the content of the aforesaid stipulation as to the minor's status and the facts set forth in the above answer to the interrogatory, which answer specified the sole evidence of defendant's alleged wanton and willful conduct. On the record, so enlarged, we were asked by both counsel, in the exercise of original jurisdiction, R.R. 1:5-4(a), 2:5, to decide the proper disposition of a motion by defendant for a judgment of *593 dismissal at the end of the entire case, to the end that the specific issue so presented be completely determined. Under the special circumstances outlined above we acceded to counsels' request. N.J. Highway Authority v. Central R. Co. of N.J., 21 N.J. 157, 162 (1956); Kelley v. Curtiss, 16 N.J. 265, 270 (1954).
Without qualification it has been recognized for many years in New Jersey that the law is settled that a minor unemancipated child may not sue his parent in tort for damages based on the parent's alleged negligence. Reingold v. Reingold, 115 N.J.L. 532 (E. & A. 1935). The recent case of Hastings v. Hastings, 33 N.J. 247 (1960), specifically reiterated that principle in cases involving simple negligence only, regardless of the existence of the parent's possession of a public liability insurance policy covering the operation of his motor vehicle. Hastings, 33 N.J., at page 252. In Hastings recognizing at p. 249 the authority of Reingold, supra, the court said, 33 N.J., at page 250:
"* * * While this court has not been hesitant or backward in overruling judge-made principles and concepts that have become outmoded in the light of modern thought, knowledge and conditions (see for example, in the present term in the tort field, Faber v. Creswick, 31 N.J. 234 (1959); Smith v. Brennan, 31 N.J. 353 (1960); Duffy v. Bill, 32 N.J. 278 (1960); McAndrew v. Mularchuk, 33 N.J. 172 (decided June 28, 1960)), we have done so only when we have been thoroughly convinced that there is no longer any sound reason to retain the old rule and that essential justice compels a change. Sydney Grossman Hotel Corporation v. Lakewood Water Co., 27 N.J. 91 (1958). We, along with every other court of last resort apparently, are not so convinced in the present situation.
The question is not one of the absence of a duty of reasonable care owed by the father to his child, but rather of immunity from suit thereon. Matters of immunity must be determined, in the absence of specific legislation, on the basis of policy or, perhaps more accurately, on the weighing of competing policies. Here we think the weight of a combination of policies dictates the result. In situations other than the precise one before us, consideration of the policies in the light of the specific facts may lead to different results, but it will be time enough to announce a conclusion on them when the occasion is specifically presented to us."
*594 Because of the closing sentence in the above quoted paragraph appellant in the instant case urges that in cases of wanton or willful negligence a different rule should prevail. True it is that, as noted, the court in Hastings (33 N.J., at page 250) limited its holding to the "precise" situation before it, but that does not mean that a different rule should prevail in cases of wanton or willful negligence, or that, even in instances of such negligence, another rule should obtain regardless of its degree. More important, however, is the fact that this court is bound by the principle enunciated in Reingold and unchanged by Hastings. If any other or different rule is to be pronounced, it must be by the Supreme Court or by the Legislature. Hastings, 33 N.J., at page 253. Nothing in Reingold or Hastings suggests that on a charge of "willful or wanton" negligence a different rule should be applied; in fact, the comprehensive holding in Reingold bars such an action as is presented by the second count in the instant case. Our highest court has not adopted any different rule and it is not the function of this court to do so. Turro v. Turro, 38 N.J. Super. 535, 544 (App. Div. 1956); Predham v. Holfester, 32 N.J. Super. 419, 428 (App. Div. 1954).
Moreover, the fact that a parent possesses public liability insurance coverage on his automobile has not been held by our Supreme Court to permit a suit in tort by a minor child against his parent based on a claim of willful and wanton negligence. Where simple negligence only was involved the existence of such an insurance policy, as noted, has been held not to be a determinative element. Hastings, 33 N.J., supra, at pages 252-253. In the case at bar appellant advanced no good reason why the existence of such a policy should add any weight to plaintiff's case merely because a charge of willful and wanton negligence was the asserted basis of recovery. We perceive none.
Apart from our conclusion that under the present New Jersey law plaintiff's second count and the proofs submitted in support thereof do not state a cause of action, *595 we are convinced that the evidence on which reliance is placed in the instant case constitutes simple negligence only and therefore falls directly within the holding in Hastings, supra. Granting to plaintiff all "legitimate inferences which might logically be drawn in his favor" from the proofs here presented (DeRienzo v. Morristown Airport Corp., 28 N.J. 231, 236 (1958)), we conclude that as a matter of law no justification exists for characterizing defendant's conduct as willful or wanton.
In reaching the foregoing conclusion we have considered initially the case of In re Lewis, 11 N.J. 217 (1953), mentioned prominently at oral argument. The factual situation there involved was so completely at variance with that obtaining in the case at bar as to render the holding therein inapplicable to the instant case. In the cited case, in an opinion by Justice Brennan, it was held that the evidence supported the trial judge's determination that the deaths of a pedestrian and of a passenger in a car operated by defendant were due to the defendant's "careless and heedless operation of the automobile in willful or wanton disregard of the rights or safety of others, an offense constituted a misdemeanor by R.S. 2:138-9, since superseded by N.J.S. 2A:113-9." The Supreme Court did not have before it the propriety of a motion for dismissal at the close of the proofs. The principal challenge was "to the sufficiency of the proof to sustain the finding [by the trial judge] of the commission of the offense." (Lewis, 11 N.J., at page 221.) The automobile driven by defendant, a 17-year-old boy, with four other boys as passengers, all of whom were asleep at the time of the accident, left the highway on which it was traveling, "jumped the curb" and crushed a pedestrian against a telephone pole killing her, then crossed the street and hit a tree on the opposite side, killing one of the occupants and injuring the others. The facts on which the Supreme Court's holding was based appear in the opinion as follows (11 N.J., at pages 222-223):
*596 "The five boys held summer jobs at a Catskill Mountain resort some 100 miles from New York City. Appellant had driven his companions down to the city after work the previous evening, arriving after midnight. His companions went separate ways after agreeing to meet him at Times Square at five a.m. for the return trip. They were due back at work about eight o'clock. Appellant testified that he spent the hours from two to five sleeping in the car. The other boys, however, apparently had no sleep at all. The car left Times Square about a quarter past five. They stopped for gasoline and a change of oil before leaving the city. One of the boys asked appellant at the service station, `How about me driving if you are tired' and appellant answered `No one drives this car but me.'
The three in the back seat were asleep before the George Washington Bridge was reached. Appellant's fourth companion, Harry Call, sitting beside him in the front seat, stayed awake until after appellant had driven a few miles in New Jersey beyond the bridge. When they left Times Square the other boys had urged appellant to hurry so that they would get back to work on time. Call testified that nevertheless as they sped along `about 60 to 65' he said to appellant, `If you were tired, we were hurrying to get back to work, that is why we were going so fast, I said we could afford to slow down or pull over to the side for a while,'  but appellant made no response. Call then fell asleep. Appellant testified that he had no recollection of Call's remark. He at first was positive in his denial that he had fallen asleep or dozed at the wheel, but finally said that he really did not know whether he did or not. Significantly, however, he testified that he had no memory whatever of any event or place after passing a boat house some distance before reaching the scene of the mishap."
Against this factual background the Supreme Court said (11 N.J., at page 223):
"Plainly it was open to the trial judge to conclude upon the evidence that appellant, knowing that he had once driven the car a long distance that night and lacked adequate sleep and rest, but feeling impelled to press on to get back to work on time, intentionally chanced driving the car at high speeds notwithstanding the evident risk that his senses were or would be so dulled as to leave him, as became clearly the case, without any appreciation or awareness of events or circumstances around him, and that it was his reckless folly in driving under those known conditions which brought about the deaths of Mrs. Holms and Martin Head. * * *"
And stated, 11 N.J., at pages 221-222:
*597 "The offense condemned by R.S. 2:138-9 may be committed by the driver of a motor vehicle who causes the death of another when there inheres in his driving the high probability of causing harm because of conditions known to him which actually impair, or potentially have the capacity to impair, his faculties for vigilance and care. It is not necessary to show ill will toward, or a positive intent to injure, another in order to establish that a motor vehicle was driven in willful or wanton disregard of the rights or safety of others. True, conduct which is willful or wanton, unlike conduct which is merely negligent, does import intent. 38 Am. Jur., Negligence, sec. 48, p. 692. However, the element of intent to harm is supplied by a constructive intention as to consequences, which entering into the intentional act which produces harm, namely, the driving of the vehicle, the law imputes to the actor, so that conduct which otherwise would be merely negligent becomes, by reason of reckless disregard of the safety of others, a willful or wanton wrong. See King v. Patrylow, 15 N.J. Super. 429 (App. Div. 1951). The emphasis is upon the reckless indifference to consequences of the intentional act of driving the motor vehicle in the face of known circumstances presenting a high degree of probability of producing harm. * * *"
In Patrylow, supra, in which the court was asked to reverse the trial court's denial of defendants' motion for judgment at the close of the case, it appeared that an 11-year-old boy while present as a licensee in a shooting gallery, was injured as the result of being wounded in the hand by an employee of the owners. It was charged that the wounding was the result of the willfully injurious act of the owners' employee. Defendants argued that liability for willful injury can be found only where positive intent of the actor to do harm to the plaintiff appears, and contended that they were entitled to judgment on their motion because plaintiffs conceded during the trial that defendants' employee did not intend to shoot the boy. In rejecting this contention the court quoted with approval the following statement from Staub v. Public Service Ry. Co., 97 N.J.L. 297, 300 (E. & A. 1922):
"* * * To establish a willful or wanton injury it is necessary to show that one with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, *598 consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result. * * *" Patrylow, supra, 15 N.J. Super., at page 433.
Plaintiff cites numerous cases presenting a variety of instances which, plaintiff contends, support the proposition that the driving of an automobile by a person who knew, or should have known, of the likelihood that sleep would overtake him and where he actually fell asleep and thereby caused an accident has been characterized as gross negligence. Apart from the fact that some of the cited cases involve the application of the provisions of guest statutes, each of them contains one or more factual elements, showing recklessness, completely absent from the proofs in the case at bar. In Blood v. Adams, 269 Mass. 480, 169 N.E. 412, 413 (Sup. Jud. Ct. 1929), it appeared that the operator of a car, while sleepy, voluntarily "closed" his eyes and permitted himself to "yield to sleep." In Moore v. Patrone, 298 Mass. 198, 10 N.E.2d 69 (Sup. Jud. Ct. 1937), it appeared that the driver of an automobile, after operating the car for three or four hours and giving repeated signs of "erratic driving" by operating his car on the wrong side of the road and then correcting his course when spoken to by plaintiff, a passenger, went off the highway and struck a pole. He had fallen asleep. His erratic driving had been caused by drowsiness which he recklessly ignored. In Carvalho v. Oliveria, 305 Mass. 304, 25 N.E.2d 764 (Sup. Jud. Ct. 1940), where a car operated by defendant at a speed of 45 miles an hour went off the road and hit a pole, defendant admitted "that he fell asleep, did not see the pole and found out afterwards that he had run into the pole; that after leaving Providence he dozed off several times"; that he felt sleepy; and that "after each time he dozed off he still found his car on the road."
In the instant case there is no proof that defendant had driven a long distance, or that he was driving at high speed, or erratically, or while driving was warned against continuing to do so, or that he felt drowsiness overtaking him *599 while operating his vehicle, or that he was under any pressure to arrive at his destination at a definite hour.
As was stated in Carvalho, 25 N.E.2d 764, supra, at page 765, it cannot be said that "falling asleep is always evidence of gross negligence." Each case must depend on its own facts. Here there is no proof, as in Carvalho, supra, that defendant was driving his car "while heavy with drowsiness" and persisted in doing so "without making the necessary effort fully to arouse himself." All we have in the instant case is that prior to starting the trip defendant realized he was sleepy and, although then cautioned by his wife, elected to drive.
Guided by the foregoing principles we hold, as a matter of law, that the proofs in the case at bar are insufficient to warrant a legitimate inference of willful or wanton conduct on the part of defendant.
We direct that a judgment of dismissal be entered in favor of defendant.