[Civ. No. 1873.    Third Appellate District.—October 7, 1918.]

CLIFFORD H. SMITH, Appellant, v. ALBERT W. SMITH et al., Respondents.

PLEADING—DEFECTIVE ANSWER—NEGATIVE PREGNANT—WHEN CURED BY TRIAL.—Even if an attempted denial in an answer is defective because pregnant with an admission of a material fact alleged in a complaint, the defect is cured when the plaintiff has without objection gone into the trial of the issue as fully and effectually as though a proper joinder thereof had been raised by the pleadings.

PAYMENT—PRESUMPTION AS TO AGREEMENT TO RETURN.—It does not follow from the mere fact that one person has delivered money or property to another that the latter has agreed to return it, the presumption under subdivisions 7 and 8 of section 1963 of the Code of Civil Procedure being that money paid by one to another was due to the latter, and that a thing delivered by one to another belonged to the latter.

PARENT AND CHILD—EARNINGS AND SERVICES OF MINOR—RIGHT OF
    PARENT.—The parents of a minor are entitled to his services and
    earnings during the whole period of his minority, unless he is
    emancipated and so invested with the right to his own services and
    the fruits thereof by some legally recognized act of emancipation
    by the parents.

ID.—ACTION BY CHILD AGAINST PARENTS—BURDEN OF PROOF OF EMAN-
    CIPATION.—In an action brought by a child against his parents, after
    attaining his majority, to recover his earnings, received by the parents
    during his minority, the burden rested upon the plaintiff to show that
    he was duly emancipated by his parents during the period of his
    minority.

ID.—ABSENCE OF AGREEMENT OF PARENTS TO RETURN—SUFFICIENCY OF
    EVIDENCE.—In this action against the parents to recover the earn-
    ings of the plaintiff received by them during his minority upon an
    alleged agreement of the parents to save them and return them to
    the plaintiff, the evidence is examined and held sufficient to sustain
    a finding that there was no such agreement.

APPEAL from a judgment of the Superior Court of
Sacramento County.   Chas. O. Busick, Judge.

The facts are stated in the opinion of the court.

E. B. Mering, M. J. Gillespie, and Eugene Aram, for
Appellant.

Eugene S. Wachhorst, Donald E. Wachhorst, and Jay L.
Henry, for Respondents.

HART, J.—The plaintiff, who is the son of the defendants,
brought this action for the purpose of recovering the sum of
five thousand six hundred dollars, alleged to have been turned
over by him in small amounts from time to time during the
period of his minority and for a period of time thereafter to
the defendants.

The complaint alleges that, "in the year 1906, the plaintiff
. . . and the defendants . . . entered into an agreement
wherein it was agreed between them that the plaintiff should
engage in various occupations and that the wages and salary
earned by him should be turned over to the defendants and
should be by said defendants invested in the name of said de-
fendants and said sums of money and the income therefrom
should be safely kept and preserved by said defendants and

all of said sums should be upon demand of the said plaintiff turned over to said plaintiff; that pursuant to said agreement said plaintiff engaged in various occupations, beginning with the year 1906, and continued in said occupations till the year 1913; that during said time all of the moneys earned by said plaintiff were turned over to said defendants; that pursuant to said agreement said defendants received all of said sums and agreed to hold said sums according to said agreement; that said defendants under said agreement received the sum of $5,600." It is alleged that, "within two years last past," the plaintiff demanded of the defendants the return of said moneys, together with the income derived therefrom, but that the latter refused and still refuse to turn over said moneys or any part thereof to plaintiff. It should, perhaps, be stated that, while the evidence shows that the plaintiff is the son of the defendants, the complaint does not disclose the relationship existing between the parties.

The defendants by their answer deny the making of any such agreement as is declared upon by the plaintiff, or that any agreement of any kind was entered into by and between the plaintiff and the defendants by or under which the latter ever received any money or moneys from the plaintiff to be by them invested for the plaintiff and to be returned to him upon his demand for the return thereof; deny that, "pursuant to such or any agreement said plaintiff engaged in various or any occupations, beginning with the year 1906, or at any other time or at all, and continued or continued in said or any occupations until the year 1913, or any other time or at all; deny that during said or any time or at all, all or any of the moneys earned by said plaintiff was turned over to said defendants, or either of them, pursuant to such or any agreement, and deny that said defendants, or either of them, received all of said or any sums and agreed to hold said or any sums according to said or any agreement; deny that said defendants, or either of them, under said agreement, received from said plaintiff, or from anyone in his behalf, the said sum of $5,600, or any sum or sums." It is then denied that any demand was made by the plaintiff upon the defendants for the return of any money or moneys alleged in the complaint to have been turned over by him under the agreement pleaded in his pleading, and then follow several special defenses, among which is that of the minority of the plaintiff during the greater portion of the

period referred to in the complaint and the support of the plaintiff by the defendants during said period, and that the defendants were legally entitled to the former's earnings during his minority.

The court found that no such agreement as is set out in the complaint was ever made or entered into between the plaintiff and the defendants, and that the plaintiff never at any time turned over any money or moneys to the defendants under an agreement between the parties that such money or moneys, with the income therefrom, would, upon the demand of the plaintiff, be turned over to him by the defendants. The court further found that no demand was ever made by the plaintiff upon the defendants for the return of any money or moneys delivered by him into the possession of the defendants. But no finding was made upon the question whether the plaintiff, during his minority, was or was not emancipated from parental control by the defendants.

Judgment passed for the defendants and his appeal is by the plaintiff from said judgment.

The proposition first invoked by the appellant is that the answer, although denying the making of the agreement pleaded by the plaintiff, is, nevertheless, pregnant with an admission by the defendants of the receipt of the wages or moneys earned by the plaintiff during the period of time mentioned in the complaint. This proposition is founded upon the denial that the defendants received such moneys or earnings "under *such* agreement"—that is, the agreement set out in the complaint—from which, it is said, the necessary implication is that they did, as a matter of fact, receive the earnings of the plaintiff and that they still retain the same, thus raising an implied agreement or promise on their part to return the same to the plaintiff.

It cannot be doubted that there is some force in the suggestion that the denials of the answer are of a character to warrant the inference that the plaintiff did turn over to the defendants, and that the latter received and still retain, the earnings of the former acquired during the period of time mentioned in the complaint, but the answer directly and squarely denies that either under the agreement pleaded in the complaint or *any* agreement whatsoever the defendants promised to return to the plaintiff whatever of his earnings he might have turned over to the defendants, and we think this

is sufficient to meet the question of fact submitted by the complaint that the defendants agreed to return to the plaintiff such of the latter's earnings as he might have delivered into possession of the former. It does not necessarily follow from the mere fact that a party has delivered money or property of any kind to another that the latter has agreed to return the same to the former. Indeed, in the absence of any showing to the contrary, the presumption is that money paid by one to another was due to the latter, and that a thing delivered by one to another belonged to the latter. (Code Civ. Proc., sec. 1963. subds. 7, 8.) But, even assuming that the answer is pregnant with an admission that the defendants received the earnings of the plaintiff during the period of time stated in the complaint, and that upon such admission at least an implied promise to return the same to the plaintiff arises, there is still another answer to the point thus made in the propositions that the case was tried, so far as plaintiff was concerned, entirely upon the theory that, as alleged in the complaint, there was an express agreement upon the part of the defendants to return such earnings to the plaintiff upon a demand by him for the same,' and, so far as the defendants were concerned, upon the theory that no such agreement as is set out in the complaint was ever made or entered into between the parties, and that whatever of his earnings or moneys the plaintiff turned over to his parents were either so turned over under the legal right of the defendants to receive and retain such moneys of plaintiff as he acquired during his minority, or that the same, after having been received by the defendants, were returned to the plaintiff. It follows, therefore, that, notwithstanding the failure of the answer, if such failure there is, directly and squarely to meet the issue offered by the complaint upon the question of the alleged indebtedness of the defendants to the plaintiff, the trial of that issue was, without objection, gone into as fully and effectually as though a proper joinder thereof had been effected by the pleadings. (*Noakes* v. *City of Los Angeles*, 178 Cal. 38, [175 Pac. 409]; *Boyle* v. *Coast Improvement Co.*, 27 Cal. App. 714, [151 Pac. 25]; *Slaughter* v. *Goldberg, Bowen & Co.*, 26 Cal. App. 318, [147 Pac. 90.])

The next point urged is that the evidence is insufficient to support the decision, but an examination of the evidence has readily convinced us that the point is without merit.

As above stated, the testimony discloses that the plaintiff is the son of the defendants, and, while, on his direct examination, he testified that for many years pending his minority and for a few years thereafter he was engaged in employments from. which he derived during his minority small and after his majority larger earnings, which he immediately turned over to his parents, giving the details thereof from a bill of particulars which he had previously prepared and served on the defendants, he however, on his cross-examination, gave testimony from which it is reasonably inferable that so much of his earnings as he derived during his minority were delivered to and received by the defendants under the authority of the latter to claim and receive the same by virtue of the provisions of section 197 of the Civil Code, although receiving some of them back, and that so much thereof, if any, as he turned over to his parents after he attained his majority, constituted a gift to the latter.

On direct, he testified, in substance, as follows: "I was born August 20, 1890. I lived with my father and mother in Sacramento. I completed my studies in the grammar school; that was all the schooling I had; I quit school in June, 1906, when I was 16 years of age, and started to work in July. At that time I had a conversation with my parents, I wanted to put my money in the bank. They said they were buying the home place and they would try—see a good chance to buy property where it would increase in value; if I would give them my money they would invest it. The money should be returned to me when I got married, they would see I had a home. I says that I wanted a little start when I got married. They told me not to worry about that; they each told me that. I worked first for J. N. Larkin, a printer. I answered an old ad in the paper that Mr. Larkin wanted a boy to learn the pressman's trade. I went down and got the job. The arrangement was that I should start in for three dollars a week and they would increase my wages. My wages were increased very rapidly. When I got paid I took the money home and gave it to my mother; my father knew I was giving it to her. He said to take care of my money, they saved that, would take care of it for me. I quit working for Mr. Larkin May 30, 1912, and went to work for P. N. Schmidt." A bill of particulars introduced in evidence showed that, up to August 20, 1911, when plaintiff became of age, he had re-

ceived the sum of $3,585.24, and thereafter, until May 30, 1913, he received $1,381.08, a total of $4,966.32, which was turned over to his parents. The bill of particulars also contains items for painting buildings, carpenter work, etc., amounting to $445. Plaintiff testified that he milked two cows for his parents, took care of a horse, irrigated, gardened and did all the general work around the property. Defendants were purchasing their home on installments. Witness said: "In about 1911 I got rather discouraged. I wanted to put some money in the bank. They discouraged me, told me the property would increase in value; it would be more profitable to let them go on as they were than to put it in the bank. I left home May, 1913. Before leaving I asked my mother to return me my money. She said she would not. I was not to have anything back as—since I married the woman I did. I married in November, 1914. My father and mother were present at the time I made the demand. I was living in San Francisco and came to Sacramento especially to see them. They both refused to give me the money."

On cross-examination, plaintiff testified that he boarded at home, that his clothing was furnished him by his parents, that they gave him some spending money, paid a doctor's bill for him and gave him money for excursions; that on one occasion his mother sent him a check for $25 and that she purchased for him for $350 a printing business in San Francisco. He stated that he had never asked his mother for a loan, whereupon a portion of a letter written by him to her was shown him which contained the statement: "And I asked you for only a loan to pay back every cent and interest and I don't get it. It may be hard to get the money but you could get it if you tried very hard and I think I have been help enough so you can do that much." In explanation of the portion of the letter not produced, witness said: "I went up there and told them I wanted to get five hundred dollars. They told me that they were pretty—they had quite a bit of bills to pay and they could not raise the money at that time so they could not give it to me. So I told them, I says 'If you can borrow it, if you can't raise it, if you borrow it, I will pay you interest so it don't go hard on you at this time.' That is, the first part of the letter goes on to tell about that. Q. You were going to borrow it from them, were you, from your parents? A. In the same words. . . . I told my mother that

I always gave her money to save for me, to invest for me, naturally, I had some coming.''

Other witnesses were introduced by the plaintiff to support his claim, but an analysis of their testimony will show that in effect it amounts to no more than this: That the mother of the plaintiff had frequently referred to their son as a ''good boy,'' that he always gave her his wages and that she and her husband, the father of plaintiff, intended to buy the latter a lot, or that everything they had would go to their two boys—the plaintiff and his brother. For instance, the plaintiff's witness, W. H. Larkin, for whom the plaintiff had worked as a printer during his minority, testified that the defendant, Mrs. Smith, had at one time said to him that ''she had two boys, and that everything they had would go to them.'' Of course, such testimony has little force in proof of the alleged fact that the defendants agreed expressly or otherwise to return to the plaintiff the moneys he turned over to them. Particularly is this true in view of his admission that he boarded at home, that his parents provided him with all his clothing, paid his doctor's bill and gave him ''spending money,'' and ''money for excursions.''

But, conceding that there was enough in the testimony of the plaintiff to warrant findings and judgment in his favor, still, on the other hand, the testimony of the defendants is amply sufficient to support the findings as made by the trial court.

The defendant, Mrs. Jennie Smith, mother of the plaintiff, testified that she never had any conversation with the plaintiff, when he first went to work or at any other time, about his wages; that she never at any time entered into an agreement or understanding with the plaintiff that he was to turn over his wages to her and that she would return the same to him upon his demand therefor or when he was married; that the plaintiff generally did as he pleased with his wages and gave her such portions thereof as pleased him; that she always placed the money so given her in the ''bureau drawer''; that he was at liberty to take it out and use it whenever he pleased, and that he not only did take back the money he gave her but that she often gave him more than he turned over to her; that he had never, until some time in the month of October, 1913, claimed that she had any money belonging to him. Mrs. Smith further testified that, after the plaintiff reached the

age of twenty-one years, she never received a cent of his wages or money derived by him from any source. She said that the plaintiff asked her and her husband for the loan of five hundred dollars after he attained his majority, and that she told him that they did not have the money with which to make such loan. It was then for the first time that the plaintiff asked for a return to him of such moneys as he had turned over to the defendants during his minority.

The defendant, Albert W. Smith, corroborated the testimony of his wife in all substantial and vital particulars.

Ralph W. Smith, brother of the plaintiff, testified that he was present at a conversation between the plaintiff and his father and mother, on the seventeenth day of October, 1913, which was two years after the plaintiff had arrived at his majority, and that on that occasion the plaintiff besought his parents for a loan of a sum of money sufficient to start him in the printing business; that the plaintiff did not then say or claim that the defendants were indebted to him; that, on the contrary, his father in said conversation said to the plaintiff that he was under no obligation to him, whereupon the plaintiff replied: "I know you are not, Pa, under no obligation to me; I only want it as a loan; I will pay it back as a loan."

It would, of course, be idle to argue that the foregoing testimony does not afford sufficient support to the decision that there was no agreement that the defendants would return such portions of the plaintiff's wages to him as he had turned over to the defendants, and that (as is at least to be implied from the findings) the plaintiff did not, after attaining his majority, deliver into the possession of the defendants any of his earnings or any money whatsoever, or, if he did, that the same were intended as a gift.

But it is said that the court's failure to find whether the plaintiff was or was not emancipated by his parents during his minority is fatal to the judgment. Under the state of the record, as it is presented here, we do not think so.

The plaintiff, it appears, became of age on the twentieth day of August, 1911, he having been born on the twentieth day of August 1890. He first started to work and to earn wages on a small scale in the year 1906, when he was but sixteen years of age. All the earnings acquired by him in that period of time he claims to have turned over to his parents, the defendants here.

There is, under the law, no abstract or implied right in a minor to claim a return of earnings acquired by him and turned over to his parents during his minority. The plaintiff here was under the legal control of his parents, and they were entitled to his services and earnings during the whole of the period of his minority (Civ. Code, sec. 197), unless he was emancipated therefrom and so invested with the right to his own services and the fruits thereof by some legally recognized act of emancipation by the parents. (Civ. Code, sec. 211.) The burden rested upon the plaintiff in this case to show that he was duly emancipated by his parents during the period of his minority. There is no evidence, save possibly that of the plaintiff himself to the effect that his parents received the earnings he derived from his employments during his minority and agreed to return the same to him on his demand for a return thereof, tending in the slightest degree to show that the defendants relinquished their right of controlling the plaintiff and of receiving his earnings during his minority, and in the absence of such a showing the presumption is, we think, that no such relinquishment took place, and that all of the plaintiff's earnings, acquired by him during his minority, legally belonged to his parents, the defendants herein. Therefore, the finding of the court that no such an agreement as is relied upon by the plaintiff was ever made or entered into by and between the parties to this action is itself conclusive against him upon the claim that he was or is entitled to a return of such moneys as he might have turned over to his parents during his minority. In other words, there having been introduced no testimony showing or tending to show that the defendants, while the plaintiff was still in his minority, relinquished their legal right to control him and to receive the benefit of his services and his earnings, there was no necessity for finding upon the question whether the plaintiff was or was not emancipated from the control of his parents by the act of the latter, the presumption being, until the contrary is shown, that there was no such emancipation and that the parents were legally entitled to claim, receive, and retain all the wages earned by him during his minority.

Among the specifications of error set forth by the plaintiff are these:

1. That there is no evidence to sustain the finding "that plaintiff did not engage in various occupations between 1906

and 1913; 2. That plaintiff did not turn over to defendants his wages; 3. That plaintiff did not demand the return of the wages.''

It is argued in the briefs with much earnestness that the foregoing findings are absolutely without any support from the evidence. But there were no such findings, as the first and second, in the order in which they are above given, made by the court below. What the court did find was that the plaintiff did not enter upon various occupations *under an agreement* of any character with the defendants that the wages he derived from his employment should be turned over to the defendants and returned by them to him upon his demand for the same, and that defendants did not receive any of plaintiff's wages under any agreement to return the same to him. These findings fall far short of saying that the defendants under no circumstances received the wages earned by the plaintiff. As to the finding referred to above as the third specification of error, there is, as we have already shown, evidence to support it.

Several of the rulings of the court touching the admissibility of certain evidence are attacked. We have carefully examined and considered the specifications thus relied upon and are not impressed with their importance. Conceding that some of them were, strictly speaking, erroneous, yet it is clear to our minds that the evidence thereby excluded or allowed, if opposite rulings thereon had been made, could not have exerted any material or important influence on the final result of the trial.

We think the judgment should be affirmed, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.