MELODY DALE FRANCO, PLAINTIFF-APPELLANT, v.
JAMES GLYNN DAVIS, DEFENDANT-RESPONDENT.

Argued October 23, 1967—Reargued January 22, 1968
Decided February 20, 1968.

Mr. *Gerald D. Miller* argued the cause for plaintiff-appellant (*Mr. Abraham Miller,* attorney; *Mr. Gerald D. Miller,* of counsel and on the brief).

Mr. *Robert F. Colquhoun* argued the cause for defendant-respondent (*Mr. Samuel A. DeGonge,* of counsel and on the brief).

The opinion of the court was delivered

PER CURIAM. ▮ This is an intra-family negligence case. The plaintiff made two basic contentions at the trial level, which she reasserts here. One is that this case is different enough factually from *Hastings v. Hastings,* 33 *N. J.* 247 (1960), in which we held that a negligence action could not be maintained by an unemancipated child against her parent, so that the principles of that decision should not bar this suit. The second is that, in any event, *Hastings* ought to be reconsidered in view of subsequent developments in this field of the law in this and other jurisdictions. Judge Halpern found no sufficient factual distinction from *Hastings* and, as a trial judge, quite properly ruled that reconsideration of the doctrine was a matter for this court alone. He therefore granted defendant's motion for summary judgment. We allowed plaintiff's application to certify her appeal before argument in the Appellate Division. *R. R.* 1:10–1A.

The facts are undisputed insofar as they relate to the legal questions before us. The plaintiff was born in 1948. Her parents were divorced while she was very young. In 1956 her mother married the defendant and the plaintiff became part of the family household in New Jersey thereby created. The defendant formally adopted her in January 1964. In June of that year the three undertook a week-end motor trip

to North Carolina, with defendant driving. An accident occurred in that state before they reached their destination. The car left the road in the early morning hours and crashed into a pole, killing the mother and injuring the plaintiff. . ‹ ; [2] Thereafter plaintiff continued to live in her adopting father's household in this state until her marriage in August, 1965, by which event she became emancipated. This suit, charging the father with negligence in the operation of the vehicle, was commenced some time subsequent to the marriage.

The defendant was covered by a liability insurance policy and so the carrier is, realistically, the true party in interest. The policy also provided for medical payments to injured persons regardless of the insured's fault. That element of the coverage is not involved in the case.

Both sides agree that, under modern conflict of laws principles, the law of New Jersey controls on the issue involved although the alleged tort occurred in North Carolina. *Mellk v. Sarahson,* 49 *N. J.* 226 (1967).

We agree with the trial court that the facts do not differ significantly from those in *Hastings* and we see no convincing reason why the fundamental rationale undergirding that opinion, which need not be fully repeated, does not dictate the same result in this case. That plaintiff was an adopted rather than a natural child of defendant's is of no consequence, since a judgment of adoption in this state establishes "* * * the same relationships, rights, duties and obligations between the child and the adopting parent as if such child were born to such adopting parent in lawful wedlock." *N. J. S. A.* 9:3–30B. Nor do we think it should make any difference that one of plaintiff's parents—her natural mother—was killed in the accident. She was not the alleged tort-feasor and the family unit still remained, though diminished in size, with all of the important aspects which we mentioned in *Hastings. Cf. Long v. Landy,* 35 *N. J.* 44 (1961); *Palcsey v. Tepper,* 71 *N. J. Super.* 294 (*Law Div.* 1962).

We also are convinced that the fact the plaintiff was emancipated by marriage (at the age of 17) some 14 months after the accident and this suit was not commenced until some time after that event does not indicate the thesis of *Hastings* should be found inapplicable. The time when the suit is to be commenced in relation to other events is wholly within the control of a plaintiff, subject only to the statute of limitations. Emancipation by marriage, while a physical break-up of the former household, is neither a complete destruction nor ordinarily a hostile occurrence disruptive of the family unit in the sense of making a parent, who was allegedly merely negligent toward a child before emancipation, a changed person and a true adversary thereafter. *Cf. Sanchez v. Olivarez*, 94 *N. J. Super.* 61 (*Law Div.* 1967). The possibility of the breakdown of individual integrity within the family at the expense of a liability insurance carrier, spelled out and stressed in *Hastings*, still remains.

There has been no erosion of *Hastings* by subsequent decisions of this court, although we remain sharply divided in the whole field of intra-family tort immunity. Suit has been allowed where the defendant is in fact a separate entity and a stranger to the family will realistically share any liability with the family member claimed to have been negligent. *Eule v. Eule Motor Sales*, 34 *N. J.* 537 (1961). In *Long v. Landy, supra* (35 *N. J.* 44), no bar to action was found where an allegedly negligent husband was killed in the accident and the suit was against his estate by his wife who was rendered incompetent by the occurrence. All policy reasons for immunity were thus permanently rendered nugatory. *Orr v. Orr*, 36 *N. J.* 236, 238 (1961) reiterated the inter-spousal bar spelled out in *Koplik v. C. P. Trucking Corp.*, 27 *N. J.* 1 (1958). See also *Patusco v. Prince Macaroni, Inc.*, 50 *N. J.* 365, 369 (1967). And *Heyman v. Gordon*, 40 *N. J.* 52 (1963), specifically followed *Hastings* in what was found to be an analogous policy situation. There have been several reported decisions in the field at the trial level involving factual variations as to the soundness of

which we express no view except to the extent they have been previously referred to herein. The additional decisions in this category include *Taibi v. De Gennaro,* 65 *N. J. Super.* 294 (*Law Div.* 1961); *Wilkins v. Kane,* 74 *N. J. Super.* 414 (*Law Div.* 1962); *Tharp v. Shannon,* 95 *N. J. Super.* 298 (*Law Div.* 1967) and *Bush v. Bush,* 95 *N. J. Super.* 368 (*Law Div.* 1967).

With respect to development of the law in this field in other jurisdictions, it will be recalled that we noted in *Hastings* that at that time no jurisdiction allowed a suit by an unemancipated minor child against a parent where only simple negligence in a purely family relationship was involved. 33 *N. J.,* at *p.* 249. Dean Prosser in the third edition of his work on Torts, published in 1964, four years after *Hastings,* still reported that "[a]s yet no court has abrogated the immunity entirely". (at *p.* 887). He commented (at *p.* 888) that Wisconsin had come close, retaining immunity only in certain exceptional situations. *Goller v. White,* 20 *Wis.* 2d 402, 122 *N. W.* 2d 193 (1963). That state had previously, however, permitted negligence actions between husband and wife. Very recently the highest court of two other jurisdictions may be said to have abrogated it entirely. *Briere v. Briere,* 107 *N. H.* 432, 224 *A.* 2d 588 (1966) (overturning prior law); *Hebel v. Hebel, Alaska,* 435 *P.* 2d 8 (1967) (first impressions). Both these states also previously allowed inter-spousal negligence actions. But during the same period, several other states faced the question for the first time or, having earlier decided such suits were barred, again were called upon to deal with it, and held that the immunity existed. *Badigian v. Badigian* 9 *N. Y.* 2d 472, 174 *N. E.* 2d 718 (1961); *Chaffin v. Chaffin,* 239 *Or.* 374, 397 *P.* 2d 771 (1964); *Downs v. Poulin, Me.,* 216 *A.* 2d 29 (1966); *Rickard v. Rickard,* 203 *So.* 2d 7 (*Fla. Dist. Ct. App.* 1967); *Watson v. Nichols,* 270 *N. C.* 733, 155 *S. E.* 2d 154 (1967); *Teramano v. Teramano,* 6 *Ohio St.* 2d 117, 216 *N. E.* 2d 375 (1966); *Wooden v. Hale,* 426 *P.* 2d 679 (*Okla.*

1967) ; *Cf. Balts v. Balts,* 273 *Minn.* 419, 142 *N. W. 2d* 66 (1966) ; *Nahas v. Noble,* 77 *N. M.* 139, 420 *P. 2d* 127 (1966) ; *Fitzgerald v. Valdez,* 77 *N. M.* 769, 427 *P. 2d* 655 (1967).

We fully appreciate that the mere continued weight of authority elsewhere should not be dispositive of New Jersey's view. Upon review of the question again, however, we are still thoroughly convinced that the reasons expressed in *Hastings* for the result there reached remain sound and that we should adhere to it.

The judgment is affirmed.

JACOBS, J., dissenting: The defendant fell asleep and lost control of his car while driving with his wife and her daughter at about 4:30 in the morning. He struck a pole, killing his wife and crippling her daughter whom he had adopted some months earlier. He carried liability insurance which contained no applicable exception and for which the full premium had undoubtedly been charged and paid. If his passengers had been his parents or other close relatives or friends, they would have been entitled to bring suit and the defendant would have been protected to the full extent of his coverage. Indeed, if his adoptive daughter had then been married to Mr. Franco, as she was during the following year and still is, she would be entitled to maintain suit and the defendant would be similarly protected by his insurance. The present *per curiam* completely forestalls suit on her part, thus leaving her wholly uncompensated and giving a substantial windfall to the insurance carrier. It reaches this distressingly unjust result because of incompatible fears of family disruption and collusion, fears which, at least here, must be recognized as utterly unreal.

My dissenting views have been extensively set forth elsewhere and need not be restated here. See *Hastings v. Hastings,* 33 *N. J.* 247, 253–61 (1960) ; *Heyman v. Gordon,* 40 *N. J.* 52, 55–60 (1963). I might note, however, that the academic world of law continues its vigorous opposition

to the *Hastings* immunity in nonparental rights cases, such as this one, and that several state courts of last resort have in recent days flatly repudiated it. *See Hebel v. Hebel,* 435 *P. 2d* 8 *(Alaska* 1967) ; *Briere v. Briere,* 107 *N. H.* 432, 224 *A. 2d* 588 (1966) ; *cf. Goller v. White,* 20 *Wis. 2d* 402, 122 *N. W. 2d* 193 (1963) ; *Balts v. Balts,* 273 *Minn.* 419, 142 *N. W. 2d* 66 (1966). Indeed even in states where the immunity is purportedly still in full force, the courts have, as Prosser puts it, "whittled it down" so as to restrict the hardships which inevitably accompany it. See *Prosser, Torts* § 116, at *p.* 887 *(3d ed.* 1964). Some of this whittling has occurred where the parent was not a natural one but a stepparent *(Burdick v. Nawrocki,* 21 *Conn. Sup.* 272, 154 *A. 2d* 242, 243 (1959)), or an adoptive parent *(Brown v. Cole,* 198 *Ark.* 417, 129 *S. W. 2d* 245, 248 (1939)), or where the child was emancipated by marriage before the suit though after the accident *(Logan v. Reaves,* 209 *Tenn.* 631, 354 *S. W. 2d* 789, 791–92 (1962)). See *Rodebaugh v. Grand Trunk Western Railroad Co.,* 4 *Mich. App.* 559. 145 *N. W. 2d* 401, 404 (1966) ; Comment, *Child v. Parent: Erosion of the Immunity Rule,* 19 *Hastings L. J.* 201 (1967) ; 12 *So. Dakota L. Rev.* 364 (1967) ; 4 *Ga. St. Bar J.* 142 (1967) ; 19 *Case W. Res. L. Rev.* 139 (1967) ; 23 *Ohio St. L. J.* 339 (1962) ; 26 *Mo. L. Rev.* 152 (1961) ; 10 *De Paul L. Rev.* 55 (1960) ; *cf.* McCurdy, *Torts Between Parent and Child,* 5 *Vill. L. Rev.* 521 (1960).

Weintraub, C. J. and Schettino, J., agree with this dissent and join me in voting to reverse.

*For affirmance*—Justices FRANCIS, PROCTOR, HALL and HANEMAN—4.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS and SCHETTINO—3.