101 N.J. Super. 448 (1968)
244 A.2d 538
LOUIS WEINBERG, SYLVIA WEINBERG, AND BARBARA A. WEINBERG, PLAINTIFFS,
v.
THOMAS J. UNDERWOOD AND KENNETH T. UNDERWOOD, AN INFANT BY HIS GUARDIAN AD LITEM, DEFENDANTS.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided June 17, 1968.
*450 Mr. Alan Kraut for the plaintiffs.
Mr. Arnold G. Shurkin for the defendants.
YANCEY, J.C.C.
On May 13, 1967 a car was allegedly at a standstill behind a double-parked car on Chancellor Avenue, Irvington, when it was struck from behind by a second car. Louis and Sylvia Weinberg, passengers in the first car, and their daughter Barbara Weinberg, driver and owner of the first car, instituted suit to recover damages from defendant brothers, one of whom drove the second car and the other of whom owned it. Defendants in their answer denied liability, claimed contributory negligence by plaintiffs and counterclaimed against plaintiff Barbara Weinberg for contribution for a pro rata share of any judgment recovered by her parents, Louis and Sylvia Weinberg. Plaintiffs bring this motion to strike the counterclaim for contribution.

I
Plaintiffs point out in their brief that "even though the plaintiff owner and operator is over 21 years of age and *451 self-supporting, she is still a member of the same household with her parents and is subject to some extent to discipline of her parents and is living in harmony with them." Thus they contend that the case law which bars tort actions between unemancipated children and their parents should apply to the counterclaim. Hastings v. Hastings, 33 N.J. 247 (1960); Franco v. Davis, 51 N.J. 237 (1968).
However, the fundamental rationale underpinning those decisions was the promotion of family unity. New Jersey, like the rest of our nation, fosters the raising of its young in family units. Thus a bar to tort actions between unemancipated children and their parents is in direct support of this public policy because it protects the respect and discipline, and thus the harmony, of the family until the child is legally capable of, or is in fact, fending for itself.
However, once the child is legally emancipated the State has no strong interest in maintaining the harmony of the family unit. It is commendable that plaintiffs are still a close-knit family, but it is not necessary for the public welfare. This is especially so where, as here, the child is 30 years old.
As did Judge Pindar in Bush v. Bush, 95 N.J. Super. 368, 375 (Law Div. 1967), this Court recognizes the common-law right of an injured party, where such injury is compensable, to maintain an action to recover damages. Immunity from suit is in derogation of this common-law principle and must therefore be strictly construed. In addition, as Justice Jacobs noted in his dissent in the 4-3 decision of Franco v. Davis, supra, at p. 243, "even in states where the immunity is purportedly still in force, the courts have, as Prosser puts it, `whittled it down' so as to restrict the hardships which inevitably accompany it. See Prosser, Torts, § 116, at p. 887 (3d ed. 1964)."
In view of such circumstances, and in the absence of any compelling reason from the facts of this case, this Court declines to extend immunity from tort liability to actions between parents and emancipated children.

*452 II
Plaintiffs do indicate in their brief why, besides protection of the family unit, they ask this Court to take such action. They state:
"This Motion to strike the Counterclaim for Contribution is made necessary by reason of the recent directive of the Supreme Court forbidding an attorney to represent the owner and operator of a vehicle and the passengers therein where a Counterclaim for Contribution has been filed by the defendant against the owner and operator. A hardship will result to the plaintiffs and to their attorney in the event this directive is obeyed as it necessitates the engagement of two other attorneys, one to represent the plaintiff owner and operator, and the other to represent her parent passengers. The work of the attorney and the expense of investigation, discovery and institution of suit would all be lost upon compliance with this unnecessary directive."
First of all, it should be pointed out that hardships also will result to plaintiffs and their attorney in the event this directive[1] is not obeyed.
Secondly, it is this Court's opinion  although admittedly not relevant to the promulgation of the directive  that the directive is both necessary and fair. It merely recognizes the old adage that one man cannot serve two masters at the same time, especially when they are moving in opposite directions. However, if he did serve both before they began *453 seeking polarized objectives, he cannot go with one if he has knowledge gained through his position as agent to the other that may be detrimental to the other.
As the Supreme Court noted in In re Braun, 49 N.J. 16, 18 (1967), the intent of Canons 6 and 37 of the American Bar Association Canons of Professional Ethics is violated when ever the conduct of an attorney raises the possibility that he has or may use the confidences of one client for the benefit of another. In In re Blatt, 42 N.J. 522 (1964), the court stated:
"It is self-evident that where a member of the bar represents a litigant in a cause, he should not thereafter represent the opposing party in any step in the proceedings in or arising out of the same cause. There is always a possibility, however remote, that confidential information received from the original client may be used to his detriment. Such conduct is plainly and patently unethical * * *." (at p. 524)
In the case at bar, even though Barbara Weinberg and her parents both share the same primary goal of recovering from defendants, the counterclaim for contribution also creates adverse interests between them. The parents may benefit if liability is found against their daughter. Thus separate attorneys are necessary to represent each opposing interest, and the plaintiffs' present attorney, having represented the Weinberg family before the fission of their interests occurred and having knowledge of all their positions, cannot fairly represent either interest.
In the long run, the Supreme Court directive will ensure undivided representation and create more work for attorneys. In addition, it will minimize any possibility of collusion between a driver and his passengers to defraud the driver's insurance company.
However, this court is certain that it is the short-run effects of the directive that are of paramount concern to plaintiffs and their attorney. Since it appears that plaintiffs engaged their present attorney on a contingent fee basis, their only burden will be to find new counsel. As far as plaintiffs' *454 present attorney is concerned, however, he has indicated to this court that he considers the divestiture of this case from him something akin to emptying his pocket at gunpoint. While there is no doubt that he is losing a chance to earn a contingent fee, it should be pointed out that the fee was not a certainty. Although plaintiffs' attorney may think their claim is a strong one legally, he knows he cannot count on a recovery until the jury returns. Thus, while he is being deprived of the chance of winning the case, he also is spared the risk of losing. At the same time, though, this court realizes that since lawyers are generally, or at least theoretically, considered fungible, the loss of an opportunity to handle a case is a real one, although not easily valued in dollars. The only consolation this court can offer plaintiffs' attorney is that his loss is the profession's gain.
However, his efforts at investigation and discovery need not go for naught. If he furnishes one of his successor attorneys with his work product, he can be compensated by that attorney within the limits of Canon 34. It is this court's opinion that any such compensation should be on a time basis and plaintiffs' attorney should retain no interest in the outcome of this case.

III
In their brief plaintiffs make this statement: "It is inconceivable that the defendant in this instance would recover a favorable decision on his Counterclaim for Contribution and Summary Judgment should be entered against him in the dismissal of the counterclaim." Even from the facts available (no affidavits were submitted), this court cannot agree. It is possible, for a start, that the car operated by Barbara Weinberg was blocking the road, or that the rear lights were defective (the incident occurred at 9:30 P.M.), or that it was illegally double parked. Thus, this court cannot find that there is no genuine issue as to any material fact related to the counterclaim for contribution. R.R. 4:58-3.
Accordingly, plaintiffs' motion to strike the counterclaim for contribution is denied.
NOTES
[1] The directive reads:

"The Supreme Court is of the view, because of the conflict of interest inherent in the situation, that an attorney should not represent both the driver of a car and his passenger in an action against the driver of another car, unless there is a legal bar to the passenger suing his own driver, as, for example, where they are husband and wife, unemancipated child and parent, or employees of the same employer and the accident occurred in the course of their employment. Where an attorney does represent both a driver and his passenger and no such legal bar exists, if a cross-claim or counterclaim is made by the other driver, a conflict of interest arises and the Supreme Court has advised the Assignment Judges that the attorney should not be permitted to continue to represent either the driver or his passenger." 91 N.J.L.J. 68 (Feb. 1, 1968).