56 N.J. 500 (1970)
267 A.2d 490
CARROLL E. FRANCE, JR., EDWARD KIRK FRANCE, AN INFANT BY AND THROUGH HIS GUARDIAN AD LITEM, CARROLL E. FRANCE, JR., AND MARTHA WILLIS FRANCE, AN INFANT BY AND THROUGH HER GUARDIAN AD LITEM, CARROLL E. FRANCE, JR., PLAINTIFFS,
v.
A.P.A. TRANSPORT CORP., A NEW JERSEY CORPORATION AND WILLIAM N. WILSON, DEFENDANTS. CARROLL E. FRANCE, JR., ADMINISTRATOR OF THE ESTATE OF DOROTHY WILLIS FRANCE, DECEASED, AND ADMINISTRATOR AD PROSEQUENDUM OF DOROTHY WILLIS FRANCE, DECEASED, PLAINTIFFS,
v.
A.P.A. TRANSPORT CORP., A NEW JERSEY CORPORATION AND WILLIAM N. WILSON, DEFENDANTS-RESPONDENTS. CARROLL E. FRANCE, JR., DEFENDANT ON COUNTERCLAIM-APPELLANT.
The Supreme Court of New Jersey.
Argued February 2, 1970.
Decided July 10, 1970.
*501 Mr. Mark D. Larner argued the cause for the defendant on counter-claim, Carroll E. France, Jr. (Messrs. Budd, Larner, Kent, Gross & Picillo, attorneys).
Mr. Peter H. Wegener argued the cause for the defendants-respondents (Messrs. McCarter & English, attorneys; Mr. Eugene M. Haring, of counsel; Mr. Peter H. Wegener on the brief).
The opinion of the Court was delivered by PROCTOR, J.
This appeal involves the question of intra-family tort immunity. On October 16, 1967, an automobile owned and operated by the plaintiff, Carroll E. France, Jr. and a tractor-trailer, owned by the defendant, A.P.A. Transport Corp., and operated by its employee William N. Wilson, were involved in a collision. Plaintiff's wife, who was killed *502 in the accident, was a passenger along with the couple's two unemancipated children. Two actions were brought. In the first, Carroll E. France, Jr. and his two children by their father as guardian ad litem sued the defendants for personal injuries and property damage. In the second action, Carroll E. France, Jr., as the administrator of the estate of his wife (she having died intestate) and as administrator ad prosequendum sued the defendants under the the Executors and Administrators Act (N.J.S.A. 2A:15-3) and the Wrongful Death Act (N.J.S.A. 2A:31-1 et seq.). The action for wrongful death was for the benefit of the husband and the two surviving children. The defendants counterclaimed for contribution against the plaintiff, individually, for all sums found due to the estate of his wife under the survival and death action. The plaintiff moved for summary judgment on the claim for contribution contending that it was barred by the doctrine of intra-family immunity. The trial court denied the motion and the Appellate Division denied leave to appeal. We granted plaintiff leave to appeal from the Appellate Division's denial.
The present suit involves the validity of both interspousal and parent-child tort immunity. Because of our decision in Immer v. Risko, 56 N.J. 482 (1970), decided today, it is unnecessary to discuss interspousal immunity further. If there were no minor children involved in this case, defendants would be entitled, under Immer, to assert their counterclaim for contribution against the plaintiff under the Joint Tortfeasors Contribution Law. N.J.S.A. 2A:53A-1 et seq. Cf. Kennedy v. Camp, 14 N.J. 390, 395 (1954). But, under Heyman v. Gordon, 40 N.J. 52 (1963), defendants' claim would still be barred by the doctrine of parent-child immunity.[1]
*503 The doctrine of parent-child immunity was first articulated in 1891 by the Mississippi Supreme Court in Hewlett v. George, 68 Miss. 703, 9 So. 885. There the court refused to allow a child to maintain a false imprisonment action against her mother for maliciously confining her in an insane asylum. The court cited no authority but based its decision on the grounds that the peace of society and repose of families forbid a minor child to sue his parent for personal injuries. Hewlett was followed by McKelvey v. McKelvey, 111 Tenn. 388, 77 S.W. 664 (1903) and by Roller v. Roller, 37 Wash. 242, 79 P. 788 (1905). In the Tennessee case, the court denied the minor the right to sue her parents for cruel and inhuman treatment, and in the Washington case, the court refused to entertain a suit by a minor against her father who had raped her.
These three decisions were later called "the great trilogy" upon which the American rule of parent-child tort immunity is based. Akers & Drummond, "Tort Actions Between Members of the Family  Husband & Wife  Parent & Child," 26 Mo. Law Rev. 152, 182 (1961). This rule, which was not previously established in either England or this country, was adopted by this state in the 1935 decision of Reingold v. Reingold, 115 N.J.L. 532 (E. & A.). In Reingold, a nineteen year old unemancipated child was barred from recovering damages for injuries suffered while a passenger in an automobile owned by her stepmother and negligently operated by her father. The opinion relied on Hewlett and the North Carolina case of Small v. Morrison, 185 N.C. 577, 118 S.E. 12, 31 A.L.R. 1135 (1923), which also relied on Hewlett. The philosophy behind the immunity doctrine articulated by the court was that of preserving the family relationship. Unlike interspousal immunity, there is no question of any statutory bar to suits between parent and child. Accordingly, the only question we need consider on this appeal is whether Reingold and the subsequent cases which have reaffirmed its principle (e.g., Hastings v. Hastings, 33 N.J. 247 (1960); Heyman v. Gordon, 40 N.J. 52 *504 (1963); Franco v. Davis, 51 N.J. 237 (1968)), should remain the law of this State. In the last three decisions, this Court has been divided four to three in upholding the immunity.
It has been frequently pointed out by critics of the doctrine that parent-child immunity has numerous exceptions and qualifications and therefore leads to anomalous results. E.g., 1 Harper & James, The Law of Torts, 647 et seq. (1956); Prosser, The Law of Torts, 887 (3d ed. 1964). For example, contract and property actions between minors and their parents are freely entertained by the courts. In re Flasch, 51 N.J. Super. 1, 29 (App. Div.) certif. denied, 28 N.J. 35 (1958); Alling v. Alling, 52 N.J. Eq. 92 (Ch. 1893); Smith v. Smith, 38 Cal. App. 388, 176 P. 382 (1918). In addition, our courts have held that there is no immunity between a child and his grandparents, Cwik v. Zylstra, 58 N.J. Super. 29 (App. Div. 1959), and even allowed an unemancipated infant to sue her grandmother for injuries resulting from the grandmother's negligence, where the grandparents were the sole support of the abandoned infant and where they stood in loco parentis. Wilkins v. Kane, 74 N.J. Super. 414 (Law Div. 1962). And there is no doubt that an emancipated child can sue his parents for a negligent wrong. Finally, our courts have permitted an unemancipated minor to sue his father's estate for injuries sustained in an accident in which the father was killed. Palcsey v. Tepper, 71 N.J. Super. 294 (Law Div. 1962). See also Brennecke v. Kilpatrick, 336 S.W.2d 68, 69-72 (Mo. Sup. Ct. 1960). Cf. Long v. Landy, 35 N.J. 44 (1961). Thus, it is apparent that there are a large number of judicially fashioned qualifications and exceptions to the parental immunity doctrine.
The reasons given for maintaining the immunity doctrine in ordinary negligence actions vary. It has been said that such actions would deplete the family exchequer, Roller v. Roller, supra, would encourage fraud and collusion, Hastings v. Hastings, supra, would disrupt domestic harmony, Reingold *505 v. Reingold, supra, would interfere with parental care, discipline and control, Rodebaugh v. Grand Trunk W.R.R., 4 Mich. App. 559, 145 N.W.2d 401, 403 (1966); but see Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193 (1963). In this State the immunity was originally based on the preservation of family harmony, Reingold v. Reingold, supra, but recent cases have emphasized the possibilities for collusion and fraud. E.g., Hastings v. Hastings, supra. Thus, the doctrine as it stands today is supported by the same rationale as interspousal immunity, and what we have said in Immer, supra, is equally applicable here. As we said there, the widespread use of liability insurance has militated against the possibility that such suits will disrupt the domestic peace or deplete the family's financial resources. (at 488-490 of 56 N.J.)
The real disagreement between the majority and the dissenters in Hastings and our cases which follow it has been over the possibility of collusion and fraud against the most frequent party in interest  the insurance carrier. 33 N.J. at 253. But as we said in Immer, supra at 493-495 of 56 N.J. we do not believe that this possibility should automatically bar the numerous meritorious claims which arise. Even assuming that a few fraudulent and collusive claims will slip through judges and juries (and there is no empirical evidence that the assumption is valid), we believe that this price would not be too great since the alternative is to continue a prophylactic rule which indiscriminately bars all claims. We do not believe that the judiciary should continue to refuse to hear an entire class of actions simply because some of these claims may be the product of venality. See Cohen v. Kaminetsky, 36 N.J. 276, 283 (1961).
In departing from parent-child immunity, we recognize that not as many states have abrogated that doctrine as have abrogated interspousal immunity. Prosser pejoratively attributes this difference to the following cause:
*506 "Although it would appear that no shadow of a difference in principle or policy is to be discovered, the retreat from the common law as to parent and child has lagged behind that as to husband and wife, apparently for no better reason than the absence of such statutes as the Married Women's Acts." Prosser, supra at 887.
There is, however, a growing minority of jurisdictions which have abandoned the immunity at least in motor vehicle negligence actions. The most recent additions to the list are Gelbman v. Gelbman, 23 N.Y.2d 434, 297 N.Y.S.2d 529, 245 N.E. 2d 192 (1969), overruling Badigian v. Badigian, 9 N.Y.2d 472, 215 N.Y.S.2d 35, 174 N.E.2d 718 (1961); Tamashiro v. DeGama, 450 P.2d 998 (Sup. Ct. Haw. 1969); Silesky v. Kelman, 281 Minn. 431, 161 N.W.2d 631 (1968); Balts v. Balts, 273 Minn. 419, 142 N.W.2d 66 (1966); Hebel v. Hebel, 435 P.2d 8 (Sup. Ct. Alaska 1967); Briere v. Briere, 107 N.H. 432, 224 A.2d 588 (1966), overruling Levesque v. Levesque, 99 N.H. 147, 106 A.2d 563 (1954); Goller v. White, supra, overruling Schwenkhoff v. Farmers Mut. Automobile Ins. Co., 11 Wis.2d 97, 104 N.W.2d 154 (1960) and Wick v. Wick, 192 Wis. 260, 212 N.W. 787 (1927). As is true of interspousal immunity, virtually all of the academic writers on the subject have condemned parent-child immunity. See the authorities cited in the dissenting opinions of Justice Jacobs in Hastings v. Hastings, supra at 254-55, Heyman v. Gordon, supra at 56, and Franco v. Davis, supra at 243. There are more recent articles on the subject but they do not add to what has already been said. In any case, as we said in Immer, supra, we cannot be controlled by the number of jurisdictions which have abrogated the immunity, or the number of writers who have criticized it. Nevertheless, it is worth noting that the trend of court decisions appears to be away from the immunity doctrine.
After a review of the arguments for and against the parent-child immunity doctrine, we are of the opinion that it should be abrogated in this State. Reingold v. Reingold, *507 supra, Hastings v. Hastings, supra, and the cases which follow them are overruled. Our decision today goes no further than allowing suits between unemancipated children and their parents for injuries suffered as a result of the negligent operation of a motor vehicle. See dissenting opinion of Justice Jacobs in Hastings v. Hastings, supra at 261. We realize that there may be areas involving the exercise of parental authority and care over a child which should not be justiciable in a court of law. See Goller v. White, supra, Silesky v. Kelman, supra. But we are not confronted with such a situation in this case and we will not speculate on what limits, if any, the rule enunciated here should have.
For the reasons stated above, the defendants' counterclaim for contribution should be permitted to stand and the order of the trial court should be affirmed.
FRANCIS, J. (dissenting).
Basically for the reasons expressed in my dissent in Immer v. Risko, 56 N.J. 482 (1970), I cannot agree with the majority opinion in this case. In my judgment, the parent-child and interspousal tort immunity rules espoused by the then majority of the Court in Heyman v. Gordon, 40 N.J. 52 (1963); Hastings v. Hastings, 33 N.J. 247 (1960); Franco v. Davis, 51 N.J. 237 (1968); and Koplik v. C.P. Trucking Corp., 27 N.J. 1 (1958) are sound and ought to be preserved. Assuming their continued applicability, defendants' counterclaim for contribution against the husband and father would be barred. In Kennedy v. Camp, 14 N.J. 390 (1954), this Court held that the Joint Tortfeasors Contribution Law provides no remedy unless there are tortfeasors who have a joint or common liability. The immunity of Carroll E. France, Jr., under the cases cited above, remove him from the category of a possible tortfeasor, and therefore defendants' counterclaim must fall.
Justices HANEMAN and HALL join in this dissent.
*508 For affirmance: Chief Justice WEINTRAUB and Justices JACOBS, PROCTOR and SCHETTINO  4.
For reversal: Justices FRANCIS, HALL and HANEMAN  3.
NOTES
[1] We find no counterclaim against the plaintiff for sums, if any, found due to the children for their own injuries. However, the case was argued and briefed as if such a claim were made and, in any case, the defendants will obviously amend their counterclaim if the trial court finds it wanting in this respect. Accordingly, we must deal with the issue of parent-child tort immunity.